UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE MOSAIC COMPANY,**<br><br>      **Plaintiff,**<br><br>  v.<br><br>**UNITED STATES,**<br><br>      **Defendant**. | Court No. 23-00246 |

## COMPLAINT

Plaintiff The Mosaic Company ("Mosaic"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest certain aspects of the final results of the U.S. Department of Commerce's ("Commerce") administrative review of the countervailing duty order on phosphate fertilizers from the Kingdom of Morocco ("Morocco") for the period November 30, 2020 through December 31, 2021 ("*Final Results*"). *See Phosphate Fertilizers From the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 76,726 (Dep't Commerce Nov. 7, 2023) ("*Final Results*"), and accompanying Issues and Decision Memorandum ("IDM"). The *Final Results* are dated November 1, 2023, and were published in the Federal Register on November 7, 2023. *See Final Results*.

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under sections 516A(a)(2)(A)(i)(I) and (a)(2)(B)(iii) of the Tariff Act of 1930, as amended.  19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (a)(2)(B)(iii).

## STANDING

3. Plaintiff is a U.S. producer of the domestic like product and therefore an interested party within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(C). Mosaic was the Petitioner in Commerce's countervailing duty investigation on phosphate fertilizers from the Kingdom of Morocco, and Mosaic participated actively in the Commerce administrative review that led to the *Final Results*, including by filing case and rebuttal briefs. Accordingly, Mosaic has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4. Plaintiff commenced this action by filing a summons on November 28, 2023, within 30 days after publication of the *Final Results* in the Federal Register.  Plaintiff is filing this Complaint within 30 days after filing the Summons.  Accordingly, this action is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5. On April 7, 2021, Commerce published a countervailing duty order on phosphate fertilizers from the Kingdom of Morocco (the "Order").  *Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Dep't Commerce Apr. 7, 2021).

6. On May 2, 2022, Plaintiff submitted a timely request to Commerce to conduct an administrative review with respect to OCP S.A. ("OCP"). Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers From the Kingdom of Morocco: Request for Countervailing Duty Administrative Review" (May 2, 2022). On June 9, 2022, Commerce published a notice initiating an administrative review of the Order for one company, OCP. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 35,165, 35,174 (Dep't Commerce June 9, 2022). The period of review ("POR") was November 30, 2020 to December 31, 2021. *See id.* On June 28, 2022, Commerce issued its initial questionnaire to the Government of Morocco ("GOM") and OCP. *See Phosphate Fertilizers From the Kingdom of Morocco: Preliminary Results of the Countervailing Duty Administrative Review, 2020-2021*, 88 Fed. Reg. 29,089 (Dep't Commerce May 5, 2023) ("*Preliminary Results*"), and accompanying Decision Memorandum ("PDM") at 2. Commerce investigated six subsidy programs for OCP that it had countervailed in the original countervailing duty investigation: (1) Provision of Phosphate Mining Rights for Less Than Adequate Remuneration ("LTAR"); (2) Government Loan Guarantees; (3) Tax Incentives for Export Operations; (4) Reductions in OCP's Tax Fines and Penalties; (5) Revenue Exclusions for Minimum Tax Contributions; and (6) Customs Duty Exemptions for Capital Goods, Machinery, and Equipment. *Id.* at 8-14. The GOM and OCP submitted responses to the initial and supplemental questionnaires between July and September 2022. *See id*.

7. The Plaintiff timely submitted new subsidy allegations on September 21, 2022, alleging that the GOM had provided additional subsidies. Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, "Phosphate Fertilizers From Morocco: New Subsidy Allegations" (Sept. 21, 2022). On February 16, 2023, Commerce initiated an investigation into

two new subsidy programs: (1) Provision of Port Services and Infrastructure for LTAR; and (2) GOM Purchase of Electricity for More than Adequate Remuneration.  Memorandum from Janae Martin and Jaron Moore, Int'l Trade Compliance Analysts, through Robert Palmer, Program Manager, to Irene Darzenta Tzafolias, Director, "Countervailing Duty Administrative Review of Phosphate Fertilizers from Morocco: New Subsidy Allegations" (Feb. 16, 2023).

8. On March 22, 2023, Mosaic and OCP submitted information from which Commerce could derive a world market benchmark price for phosphate rock for use in measuring the adequacy of remuneration of phosphate mining rights.  Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers From Morocco: Petitioner's Submission of Factual Information to Measure the Adequacy of Remuneration (Mar. 22, 2023) ("Petitioner's Benchmark Submission"); Letter from Covington & Burling LLP to Sec'y of Commerce, re: Phosphate Fertilizer from the Kingdom of Morocco: New Factual Information (Mar. 22, 2023) ("OCP's Benchmark Submission").  Petitioner submitted publicly available pricing data for phosphate rock from CRU, Argus, and Profercy Phosphates.  Petitioner's Benchmark Submission at 2, Exhibits 1(a)-1(g).  OCP submitted publicly available and subscription-based pricing data for phosphate rock compiled by CRU, Fertecon, and Profercy Phosphates, which included phosphate rock price series for China, Egypt, and Syria.  OCP's Benchmark Submission at 2, Exhibits 1-3.

9. In its rebuttal, Mosaic submitted additional factual information demonstrating that phosphate rock prices from China, Egypt, and Syria were not comparable to phosphate rock prices from Morocco.  Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers From Morocco: Petitioner's Benchmark Rebuttal

4

Submission (Apr. 5, 2023) ("Petitioner's Benchmark Rebuttal Submission") at 2-4, Exhibits 1-13.

10. Commerce issued the *Preliminary Results* on April 28, 2023. *See* PDM. Commerce preliminarily determined that all six subsidy programs determined to be countervailable in the initial investigation were also countervailable during the POR. *Id.* at 9-14. Commerce preliminarily calculated a subsidy rate for OCP of 14.49 percent *ad valorem*. *Preliminary Results*. Commerce deferred consideration of the new subsidy programs. PDM at 15.

11. With respect to the Provision of Phosphate Mining Rights for LTAR program in particular, Commerce stated that the GOM did not submit any new information that warranted reconsideration of its prior determination on the countervailability of the program and, consistent with past practice, it preliminarily determined that the program confers a financial contribution and is specific to OCP. *See id.* at 10. Commerce preliminarily assigned a subsidy rate for the program of 13.63 percent *ad valorem*. *Id.* at 11.

12. To assess the adequacy of remuneration and thereby calculate the amount of benefit under this program, Commerce applied the hierarchy for selecting a benchmark under 19 C.F.R. § 351.511(a)(2). As it did in the investigation, Commerce preliminarily determined that there were no suitable tier one in-country prices for phosphate ore mining rights in Morocco, because the GOM is the sole provider of phosphate mining rights. *Id.* Commerce also preliminarily determined there were no appropriate tier two world market prices for phosphate ore mining rights that would have been available to purchasers in Morocco. *Id.* Commerce therefore conducted a tier three analysis under 19 C.F.R. § 351.511(a)(2)(iii). *Id.* at 10-11.

13. Consistent with its approach in the investigation, Commerce constructed a world market benchmark for the "underlying good conveyed *via* mining rights (*i.e.*, phosphate rock)." *Id.* Specifically, Commerce compared the actual per-unit cost buildup that OCP reported for its beneficiated phosphate rock[1] to an average of world market prices for phosphate rock Commerce determined to be comparable to OCP's rock. *Id.*

14. Commerce derived a world market benchmark price using 2021 prices for phosphate rock published in the following sources: CRU, Argus Phosphates, Fertecon, and Profercy Phosphates Limited. Memorandum from Jaron Moore, Int'l Trade Compliance Analyst, through Robert Palmer, Program Manager, to File, "OCP S.A. Calculations for the Preliminary Results" (May 3, 2023) ("OCP Prelim. Calc. Memo.") at 3. Commerce stated that it limited its analysis to these data sources, because the bone phosphate of lime ("BPL") content (and by extension, the phosphorous pentoxide ("$P_2O_5$")) for phosphate rock covered by these sources was comparable to OCP's own phosphate rock. *Id.* The selected prices from industry publications correspond to phosphate rock with BPL levels ranging from as low as 60% BPL (for Egypt, 60-68% BPL, as reported by CRU) to as high as 72% (for Jordan, 66-72% BPL, as reported by CRU). OCP Prelim. Calc. Memo., Attachment I, Calculations Worksheet: Phosphate Rock Benchmark. Commerce included prices for Egyptian, Chinese, and Syrian phosphate rock, among others. OCP Prelim. Calc. Memo., Attachment I, Calculations Worksheet: Phosphate Rock Benchmark. Commerce calculated a simple average of the selected price data to arrive at a per-unit phosphate rock benchmark price of $74.63 (or MAD 670.80) per metric ton. *Id*.

---

[1] Beneficiation refers to the process of removing impurities such as sand, clay, and other carbonates from phosphate ore.

6

15. To calculate the benefit for this program in the *Preliminary Results*, Commerce multiplied the difference between its calculated per-unit cost buildup and the benchmark per-unit price of phosphate rock by the total amount of phosphate rock mined and beneficiated by OCP during the POI. PDM at 11. To calculate OCP's per-unit cost build up, Commerce preliminarily took the total mining costs that OCP reported for 2021 and deducted what OCP characterized as its 2021 HQ/support costs and its 2021 debt costs. Commerce added an amount for profit and then divided the sum by the total amount of rock that OCP reported that it produced in 2021. OCP Prelim. Calc. Memo. at 5.

16. On October 11, 2023, Commerce issued a post-preliminary analysis of the new subsidy allegations, including the alleged Provision of Port Services for LTAR program. Memorandum from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa W. Wang, Assistant Secretary, re: Post-Preliminary Analysis of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Kingdom of Morocco; 2020-2021 (Oct. 11, 2023) ("Post-Prelim. NSA Memo."). With regard to the Provision of Port Services for LTAR program, Commerce only addressed the issue of benefit and made no findings regarding financial contribution or specificity. *Id.* at 3-6. To assess benefit, Commerce preliminarily concluded that there was no tier one or tier two benchmark available and conducted a tier three analysis under 19 C.F.R. § 351.511(a)(2)(iii). *Id.* at 3-5. In its tier three analysis, Commerce concluded that that the prices set by Agence Nationale des Ports ("ANP") were consistent with "market principles," which Commerce assessed based on "the GOM's narrative description of ANP's price-setting philosophy" and evidence that ANP was profitable. *Id.* at 5-6. Commerce, therefore, preliminarily determined that the concession agreement between OCP and ANP to operate terminals at the port of Casablanca, Jorf Lasfar,

and Safi conferred no benefit to OCP during the period of review. *Id.* at 6. Commerce stated that it intended to continue investigating this program in subsequent administrative reviews "given the novel and unique nature of this program." *Id.*

17.     Mosaic, OCP, and the GOM filed case briefs and rebuttal briefs on October 16, 2023 and October 20, 2023, respectively. *See* IDM at 3. Mosaic argued in its case brief that Commerce correctly found that OCP receives countervailable subsidies under the Phosphate Mining Rights for LTAR program but erred in calculating the benefit of this program. *See* Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers from Morocco: Petitioner's Case Brief (Oct. 16, 2023) ("Petitioner's Case Br.") at 2-12. In particular, Mosaic argued that Commerce erred in excluding certain price data that reflected phosphate rock with a similar BPL to OCP's. *Id.* at 4-6. Mosaic also argued that Commerce erred in including Egyptian, Chinese, and Syrian phosphate rock prices in the world market benchmark price. *Id.* at 6-9. Mosaic argued that Commerce should exclude Egyptian phosphate rock prices because evidence on the record demonstrates that Egyptian rock is of low quality and not reasonably comparable to OCP's phosphate rock. *Id.* Mosaic also argued that Commerce should exclude Chinese and Syrian phosphate rock prices because non-market forces significantly distorted such prices. *Id.* at 9-12.

18.     Mosaic argued further that Commerce erred by declining to countervail the ANP's provision of port services and infrastructure to OCP for LTAR, because the record evidence demonstrated that this program involved a financial contribution to OCP and that it was *de facto* specific. *Id.* at 16-19. Additionally, Mosaic argued that the record evidence demonstrated that the concession fees that ANP charges to OCP for port services and

infrastructure are not set in accordance with market principles, and therefore confer a benefit on OCP.  *Id.* at 19-20.

19.   In its rebuttal brief, Mosaic argued that Commerce should reject OCP's arguments regarding its alleged HQ/support and debt costs and continue to omit such costs from its phosphate rock cost build-up.  *See* Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers from Morocco: Petitioner's Rebuttal Brief (Oct. 20, 2023) ("Petitioner's Rebuttal Br.") at 5-11.  Mosaic further argued that OCP's proposed allocation method for HQ/support and debt costs contained multiple distortions.  *Id.* at 11-15.

20.   Commerce published the *Final Results* in the Federal Register on November 7, 2023.  88 Fed. Reg. 76,726.  In the *Final Results*, Commerce reversed its position from the *Preliminary Results* and included the costs that OCP had characterized as 2021 HQ/support costs and 2021 debt costs in its cost build-up for phosphate rock.  IDM at 33-37.  Commerce correctly stated that the HQ/support costs and debt costs "are not directly tied to production{.}" *Id*. at 35.  However, Commerce also asserted that "HQ and {s}upport costs are relevant to OCP's production and pricing of phosphate rock" and that "{a}n attempt to further segregate OCP's reconciled and verified HQ and support, and Debt costs in a manner inconsistent with its accounting methodology would be unreasonable and extremely complex." *Id.*  Commerce also determined that the OCP's debt costs were "primarily used to fund capital improvements associated with its mining operations." *Id.*  Commerce accepted OCP's allocation of HQ and support costs allocated across four sites – two phosphate rock mining sites and two chemical manufacturing sites – based on a partial calculation of total site costs and capital expenditures. *Id.*; *see also* Letter from Covington & Burling LLP to Sec'y of Commerce, re: Phosphate Fertilizer from the Kingdom of Morocco: OCP S.A. Section III Initial Questionnaire Response

(Aug. 22, 2022) at 76-77.  As a result of these changes in approach from the *Preliminary Results*, Commerce concluded that the Provision of Phosphate Mining Rights for LTAR subsidy program was not countervailable because it did not confer a measurable benefit.  IDM at 12.

21.     Additionally, Commerce rejected Mosaic's arguments that it should exclude Egyptian, Chinese, and Syrian prices from the world market benchmark price for phosphate rock.  IDM at 27-29.  Commerce stated: "Commerce's benchmark price is necessarily comprised of prices both above and below the average benchmark price{}" and that its "practice is not to exclude particular benchmark prices simply because they are low or high." *Id.* at 28.  Commerce also stated that with regards to Chinese and Syrian prices: "The petitioner has failed to point to market dynamics in the destination countries for the exports in question that would lead to a finding of distortion, nor has it provided sufficient information to support the argument that government influence in these respective countries is causing *export prices* to other markets to be distorted." *Id.*  Commerce did not discuss the evidence in Mosaic's case brief that the Chinese government has directly intervened in the export market by imposing export taxes or export bans.  *See* Petitioner's Case Br. at 10.  Nor did Commerce address record evidence discussing how sanctions had forced Syria to "sell {phosphate rock} at a political discount{.}" Petitioner's Case Br. at 11-12 (citing Petitioner's Benchmark Rebuttal Submission at Exhibit 11).

22.     Commerce rejected Mosaic's arguments that it erred in preliminarily finding the Provision of Port Services and Infrastructure for LTAR program was not countervailable because ANP's prices were not set in accordance with market principles. *Id.* at 52-54.  Commerce stated that it "examined the methodology that ANP uses when setting concession fees, which indicates that ANP does account for its costs, revenues, and profits when it sets prices" and that this information, in addition to evidence that ANP was profitable from 2019-2021, supports a

determination that the prices were set in accordance with market principles. *Id.* at 53. Commerce reiterated that it intends to continue examining this program in future reviews. *Id.* at 54.

23. After issuing the *Final Results*, the Department issued additional explanation regarding its approach to measuring the adequacy of remuneration for the Provision of Mining Rights for LTAR program. *See* Memorandum from Jaron Moore, Int'l Trade Compliance Analyst, to the File, "Final Results of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Kingdom of Morocco: Business Proprietary Information Accompanying the Issues and Decision Memorandum for the Final Results" (November 2, 2023) ("Post-Final Determination"). In the Post-Final Determination, Commerce rejected arguments from Mosaic's case brief that Commerce should include certain prices for phosphate rock of comparable BPL content to OCP's phosphate rock. *See id.*

## STATEMENT OF CLAIMS

### Count One

24. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 23.

25. Commerce's decision in the *Final Results* to include the costs that OCP had characterized as 2021 HQ/support costs and 2021 debt costs in the phosphate rock cost build-up is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law. This unlawful finding contributed to Commerce's erroneous conclusion that OCP received no measurable benefit from the Provision of Mining Rights for LTAR program during the POR.

### Count Two

26. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 23.

27. Commerce's decision in the *Final Results* to include Egyptian, Chinese, and Syrian phosphate rock prices in the phosphate rock benchmark is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law. In addition, Commerce's exclusion of certain prices for phosphate rock of comparable BPL content to OCP's phosphate rock, which Mosaic had argued should be included in the benchmark (as discussed in the business proprietary Post-Final Determination), is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law. These unlawful findings contributed to Commerce's erroneous conclusion that OCP received no measurable benefit from the Provision of Mining Rights for LTAR program during the POR.

### Count Three

28. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 23.

29. Commerce's finding that the Provision of Mining Rights for LTAR subsidy program conferred no measurable benefit to OCP during the POR is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law.

### Count Four

30. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 23.

31. Commerce's decision not to countervail the GOM's Provision of Port Services and Infrastructure for LTAR program is unsupported by substantial evidence or otherwise not in accordance with law. Commerce unlawfully found that the ANP set the terms of OCP's concession agreements in accordance with market principles, and that OCP therefore did not receive a benefit under this program. Commerce also erred in failing to make findings regarding financial contribution and specificity regarding this program.

## REQUEST FOR JUDGMENT AND RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that the Court:

1) Hold that certain aspects of Commerce's final results in the administrative review of the countervailing duty order on phosphate fertilizers from the Kingdom of Morocco for the period November 30, 2020 through December 31, 2021 are not supported by substantial evidence and otherwise not in accordance with law;

2) Remand the final results to Commerce for disposition in accordance with the Court's final opinion; and

3) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jeffrey I. Kessler
David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann
Alexandra Maurer
Kanzanira Thorington*

WILMER CUTLER PICKERING
  HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6612
jeffrey.kessler@wilmerhale.com

*Resident in WilmerHale's New York office:
7 World Trade Center
250 Greenwich Street
New York, NY 1000

Date: December 28, 2023