**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| | |
|---|---|
| THE MOSAIC COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Consol. Court No. 23-00246** |
| ) | |
| UNITED STATES, ) | |
| ) | **NON-CONFIDENTIAL VERSION** |
| Defendant, ) | |
| ) | **Business Proprietary Information** |
| ) | **removed from pages 1-2, 4-5, 10-11,** |
| and ) | **and 17-18.** |
| ) | |
| OCP S.A., ) | |
| ) | |
| Defendant-Intervenor, ) | |
| ) | |
| and ) | |
| ) | |
| THE GOVERNMENT OF THE KINGDOM OF ) | |
| MOROCCO, ) | |
| ) | |
| Defendant-Intervenor. ) | |

**REPLY BRIEF OF CONSOLIDATED PLAINTIFF AND DEFENDANT-INTERVENOR**
**OCP S.A. IN SUPPORT OF OCP S.A.'S RULE 56.2 MOTION**
**FOR JUDGMENT ON THE AGENCY RECORD**

Dated:  March 3, 2025

William R. Isasi
Kathleen McNulty
Wanyu Zhang
Julia Shults
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956

Micaela McMurrough
Hardeep Josan
Jordan B. Bakst
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue, 42nd Floor
New York, NY 10018

*Counsel to OCP S.A.*

Consol. Ct. No. 23-00246

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ................................................ 1

I.    Commerce's Rejection of OCP's Minor Correction Pertaining to the OFPPT Refund and Application of AFA Is Unsupported by Substantial Evidence and Otherwise Contrary to Law .................................................. 1

II.   Commerce's *De Facto* Specificity Determination for Reductions in Tax Fines and Penalties Is Unsupported by Substantial Evidence and Otherwise Contrary to Law. ..................................................................... 2

III.  Commerce Unlawfully Demanded Information Regarding "Other Benefits." ................... 3

ARGUMENT ................................................................... 4

I.    Commerce's Rejection of OCP's Minor Correction Pertaining to the OFPPT Refund and Application of AFA Is Unsupported by Substantial Evidence and Otherwise Contrary to Law .................................................. 4

      A.    The Government and Mosaic Fail to Counter the Evidence that OCP's Reporting of the OFPPT Refund Was a Minor Correction ....................... 5

      B.    The Government and Mosaic Fail to Rebut OCP's Argument that Rejection of the OFPPT Refund as a Minor Correction Is Inconsistent with Commerce's Practice. ..................................................... 6

      C.    The Government and Mosaic Fail to Rebut that the Record Does Not Support a Facts Available Determination or Application of Adverse Inferences. ..................................................................... 9

      D.    The Government and Mosaic Fail to Establish that the Magnitude of the AFA Rate Applied by Commerce Is Supported by Evidence and Otherwise in Accordance with Law ......................................... 10

II.   Commerce's *De Facto* Specificity Determination for Reductions in Tax Fines and Penalties Is Unsupported by Substantial Evidence and Otherwise Contrary to Law. ..................................................................... 11

      A.    The Government and Mosaic Fail to Establish that Commerce Took Account of the Diversification of Economic Activities Within Morocco in Its *De Facto* Specificity Determination. .................................. 13

      B.    The Government and Mosaic Fail to Rebut OCP's Argument that Commerce Unlawfully Refused to Consider OCP's Size in Its Disproportionality Analysis. ............................................... 14

III.  Commerce Unlawfully Investigated "Other Benefits." .......................... 19

CONCLUSION ................................................................ 23

Consol. Ct. No. 23-00246

# TABLE OF AUTHORITES

**Cases**                                                                      **Pages**

*AK Steel v. United States,*
    192 F.3d 1367 (Fed. Cir. 1997) ........................................................................15, 16

*Bethlehem Steel Corp. v. United States*
    25 CIT 307, 140 F.Supp.2d 1354 (2001) .........................................................15, 17

*BMW of N. Am. LLC v. United States,*
    926 F.3d 1291 (Fed. Cir. 2019) ...............................................................................11

*Borden, Inc. v. United States,*
    22 CIT 233, 4 F.Supp.2d 1221 (1998) .....................................................................10

*Changzhou Trina Solar Energy Co. v. United States,*
    195 F.Supp.3d 1334 (Ct. Int'l Trade 2016) ...........................................................23

*CITIC Trading Co. v. United States,*
    27 CIT 356 (2003) ....................................................................................................10

*Guizhou Tyre Co. v. United States,*
    523 F.Supp.3d 1312 (Ct. Int'l Trade 2021) ...........................................................23

*Jiangsu Zhongji Lamination Materials Co. v. United States,*
    405 F.Supp.3d 1317 (Ct. Int'l Trade 2019) ...........................................................23

*JTEKT Corp. v. United States,*
    33 CIT 1797, 675 F.Supp.2d 1206 (2009) ..............................................................22

*KG Dongbu Steel Co. v. United States,*
    695 F.Supp.3d 1338 (Ct. Int'l Trade 2024) .......................................................21, 22

*Loper Bright Enters. v .Raimondo*
    44 S. Ct. 2244 (2024).........................................................................................10, 14

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983).....................................................................................................6

*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n,*
    494 F.3d 1371 (Fed. Cir. 2007).................................................................................22

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003)..................................................................................10

*Oman Fasteners, LLC v. United States,*
    125 F.4th.1068 (Fed. Cir. 2025) ................................................................................11

Consol. Ct. No. 23-00246

*PPG Industs. Inc. v. United States,*
    978 F.2d 1232 (Fed. Cir. 1992).........................................................21

*Qingdao Taifa Grp. Co. v. United States,*
    33 CIT 1090, 637 F.Supp.2d 1231 (2009)...........................................13

*Steel Auth. of India v. United States,*
    25 CIT 482, 149 F.Supp.2d 921 (2001)................................................9

*The Mosaic Co. v. United States,*
    659 F.Supp.3d 1285 (Ct. Int'l Trade 2023) ............................... *passim*

*The Mosaic Company v. United States,*
    744 F.Supp.3d 1367 (Ct. Int'l Trade 2025) .............................. *passim*

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..............................................................22

19 U.S.C. § 1677(5)(B)........................................................................21

19 U.S.C. § 1677(5A)(D)(iii)...........................................................12, 17

19 U.S.C. § 1677e(d) ...........................................................................11

19 U.S.C. § 1677d..........................................................................21, 22, 23

**Regulations**

19 C.F.R. § 351.311 .............................................................................21

**Administrative Materials**

*Bottom Mount Combination Refrigerator-Freezers from the Republic of Korea,*
    77 Fed. Reg. 17,410 (Mar. 26, 2012).....................................................8

*Certain Oil Country Tubular Goods from China,*
    74 Fed. Reg. 64,045 (Dec. 7, 2009) .......................................................8

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of
    China Final Affirmative Determination,*
    80 Fed. Reg. 34,888 (June 18, 2015) .....................................................7

*Certain Polyethylene Terephthalate Resin from China: Final CVD Determination,*
    81 Fed. Reg. 13,337 (Mar. 14, 2016).................................................8, 9

*Crystalline Silicon Photovoltaic Products ("CSPP") from China from China:
    Final Determination Calculations for Wuxi Suntech Power Co. (Dec. 15, 2014)* ................6,7

iii

*Crystalline Silicon Photovoltaic Products from China: Verification of the Questionnaire Responses Submitted by Wuxi Suntech Power Co., and Cross-Owned Companies* (Oct. 3, 2014) ..............................................................6, 7

*Crystalline Silicon Photovoltaic Products from China: Minor Corrections—Wuxi Suntech Power Co.*, (Aug. 28, 2014) .................................................................7

*Fresh, Chilled, and Frozen Pork from Canada*, Initiation of CVD Investigation 54 Fed. Reg. 5,537 (Feb. 3, 1989) ...........................................................................22

*Large Civil Aircraft from Canada: Final Affirmative CVD Determination* , 82 Fed. Reg. 61,252 (Dec. 27, 2017) .................................................................18

*Phosphate Fertilizers from Morocco: Final Affirmative CVD Determination*, 86 Fed. Reg. 9,482 (Feb. 16, 2021) ...................................................................20

*Phosphate Fertilizers from Morocco: Memorandum to Joseph A. Laroski Jr. from James Maeder, Post-Preliminary Determination of CVD Investigation* (Jan. 6, 2021) .........................................................................................................20

*Ripe Olives from Spain: Final Affirmative CVD Determination*, 83 Fed. Reg. 28,186 (June 18, 2018) ...................................................................8

*Truck and Bus Tires from China: Final Affirmative CVD Determination Final Affirmative CVD Determination,* 82 Fed. Reg. 8,606 (Jan. 27, 2017)......................................8

*Sugar from Mexico: Final Affirmative Determination in the CVD Investigation*, 80 Fed. Reg. 57,337 (Sept. 16, 2015) ............................................................17, 18

NON-CONFIDENTIAL

OCP S.A. ("OCP"), as Plaintiff in the above-captioned consolidated action, submits this reply to the response brief of the United States, *see* Government's Resp. in Opp'n to Pls.' Mots. for J. Upon the Administrative R. (Jan. 14, 2025), ECF No. 57 ("Gov't Resp."), and to the response brief of The Mosaic Company's ("Mosaic"), *see* Mosaic's Mem. in Opp'n to OCP's Rule 56.2 Mot. for J. Upon the Agency R. (Jan. 29, 2025), ECF No. 66 ("Mosaic Resp.").

## <u>SUMMARY OF THE ARGUMENT</u>

I.    **Commerce's Rejection of OCP's Minor Correction Pertaining to the OFPPT Refund and Application of AFA Is Unsupported by Substantial Evidence and Otherwise Contrary to Law.**

As explained in its opening brief, OCP promptly and voluntarily disclosed a small tax refund from the Office de Formation Professionnelle et de la Promotion du Travail ("OFPPT") as a minor correction ***at the start of the verification***, after having discovered this refund in an account not typically used to book tax refunds.  Commerce rejected this correction as not minor, despite the manifestly minor nature of the correction, which would have resulted—at most—in a program specific CVD rate of only [          ].

The Government defends the rejection, arguing Commerce lacked sufficient time to evaluate the benefit information for OFPPT following OCP's disclosure.  This *post hoc* rationalization must be rejected; Commerce had more than eight weeks to analyze this program before the *Final Results*.  Arguments by the Government and Mosaic that Commerce's rejection was proper because the correction related to a "new" or "unknown" program are also unavailing. The agency has routinely accepted similar disclosures as minor corrections under analogous circumstances.  In declining to do so here, Commerce arbitrarily and capriciously departed from its practice without explanation, in violation of the law.

Consol. Ct. No. 23-00246

The Government and Mosaic overlook that the supposed gap preventing Commerce from calculating a benefit did not exist.  The information Commerce needed is on the record and was examined by the agency at verification.  Similarly, arguments that Commerce properly applied adverse facts available ("AFA") because OCP failed to report the OFPPT refund earlier apply the wrong legal standard.  OCP acted to the best of its ability throughout this review, including when it voluntarily disclosed this small tax refund at the beginning of verification.  Consequently, the statutory prerequisites for AFA were not met.

Finally, arguments that Commerce's use of AFA for the OFPPT refund was lawful because it was based on a CVD rate calculated for a similar Moroccan program are directly contradicted by Federal Circuit case law requiring that AFA rates must be reasonable and based on the totality of the circumstances.  Here, the small refund, coupled with OCP's voluntary disclosure of the refund as a minor correction, mean that Commerce's AFA rate, [   ] times greater than any possible rate that could be calculated from the evidence, was unsupported by the record evidence and otherwise contrary to law.

## II.    Commerce's *De Facto* Specificity Determination for Reductions in Tax Fines and Penalties Is Unsupported by Substantial Evidence and Otherwise Contrary to Law.

OCP explained in its opening brief that reductions in tax fines and penalties granted by the Government of Morocco ("GOM") are generally available and widely used, and therefore not specific under the law.  This Court has twice agreed with OCP.  Most recently, this Court found Commerce's *de facto* specificity determination in the remand redetermination of the Investigation of this CVD proceeding to be unlawful and "absurd."  *The Mosaic Company v. United States*, 744 F.Supp.3d 1367, 1379–80 (Ct. Int'l Trade 2025) ("*Mosaic II*").  Because Commerce employed here the same disproportionate use analysis squarely rejected by the Court

Consol. Ct. No. 23-00246

in *Mosaic II*, that opinion is directly applicable, and this Court should find Commerce's specificity analysis unlawful.

As OCP explained in its opening brief, Commerce failed to consider the diversification of economic activities within Morocco, or use that analysis to inform its specificity determination, contrary to law.  Arguments by the Government and Mosaic that Commerce conducted a diversification analysis that informed its specificity determination are meritless.  Commerce's superficial observation regarding the number of sectors in Morocco—without considering the concentration of economic activity within those sectors—is in no way sufficient to assess the diversification of economic activities in Morocco.  Moreover, at no point did Commerce connect this superficial observation to its specificity determination.

The Government and Mosaic argue that Commerce was not required to consider OCP's large size relative to other companies when finding disproportionate use.  This argument distorts and ignores prior decisions by this Court and the Federal Circuit, and misrepresents Commerce's practice, which require that Commerce show the respondent is favored in some way, *e.g.*, it received more than its "fair share" of benefit.  Analysis of what constitutes OCP's "fair share" requires Commerce to compare OCP to other recipient companies, including with respect to size.  Commerce conducted no such analysis here.

**III.    Commerce Unlawfully Demanded Information Regarding "Other Benefits."**

In response to OCP's argument that Commerce unlawfully continued seeking information for programs it had previously determined to ***not*** be countervailable subsidies, and unlawfully demanded information from OCP regarding "other benefits" received, the Government and Mosaic argue that this Court already rejected OCP's claims in *The Mosaic Co. v. United States*, 659 F.Supp.3d 1285 (Ct. Int'l Trade 2023) ("*Mosaic I*").  Their response ignores the key factual

difference that, in this review, Commerce made its request despite possessing facts affirmatively demonstrating that the information it sought related to purported programs Commerce had already determined were not countervailable subsidies.  Commerce's request lacked any evidentiary basis.  In fact, the available evidence indicated ***exactly the opposite*** because some programs had already been found to be ***not countervailable***.  Commerce's request was also contrary to the agency's practice of declining to investigate programs it has already determined not to be countervailable, absent new information.

Separately, the Government and Mosaic argue that Commerce's request for information regarding "other benefits" is lawful because the law provides Commerce with broad investigative discretion.  This argument fails because it relies on a misreading of law, which requires Commerce to possess information demonstrating the "appearance" of a countervailable subsidy ***before*** seeking information on unspecified programs for which no allegation has been made.  Commerce thus acted contrary to law.

## **ARGUMENT**

### I.    **Commerce's Rejection of OCP's Minor Correction Pertaining to the OFPPT Refund and Application of AFA Is Unsupported by Substantial Evidence and Otherwise Contrary to Law.**

Commerce's rejection of the OFFPT tax refund as a minor correction and application of an AFA rate more than [   ] times higher than the rate on the record for this refund was unsupported by substantial evidence and otherwise unlawful.  Mem. in Supp. of OCP's Rule 56.2 Mot. for J. on the Agency R. (Aug. 7, 2024), ECF No. 75 ("OCP Br.") at 15–26.  The Government and Mosaic seek to salvage Commerce's unlawful determination by relying on *post hoc* rationalizations, mischaracterizations of Commerce's practice, misstatements of law, and ignorance of the record evidence.  The Court should reject their arguments.

### A.    The Government and Mosaic Fail to Counter the Evidence that OCP's Reporting of the OFPPT Refund Was a Minor Correction.

Commerce improperly rejected OCP's reporting of the OFPPT refund as a minor correction. The record establishes conclusively the minor nature of the correction, as the maximum CVD rate possible for the OFPPT refund is a mere [      ]%. OCP calculated the rate for the refund based on two data points:  (1) the amount of the refund, and (2) Commerce's calculated sales denominator. Both are on the record,[1] and Commerce examined these amounts in Morocco. *See* Verification Report at 12 (P.R. 349; C.R. 399).

According to the Government, OCP's reporting of this "new" program at verification left Commerce without sufficient time to "test" information about the OFPPT refund during verification, to "analyze whether it constituted a financial contribution or was specific, or for {Commerce} to request additional information regarding the program from the GOM." Gov't Resp. at 10–12. These arguments are false and contradicted by Commerce's determination. Commerce never expressed concern about its ability to timely verify information pertaining to the benefit provided by this refund but instead ***confirmed*** that it examined the account in which the OFPPT refund was booked and found "no evidence that {OCP} was receiving other subsidies." Verification Report at 12 (P.R. 349; C.R. 399). The Government's argument that Commerce lacked sufficient time to assess whether the refund was a financial contribution or specific is a strawman; OCP has not disputed that the OFPPT refund was a financial contribution

---

[1] The amount of this refund is [                    ]. Verification Report at 2 (P.R. 349; C.R. 399); *Administrative Review of Phosphate Fertilizers from the Kingdom of Morocco*: OCP S.A. Verification Exhibits (Sept. 15, 2023) ("OCP Verification Exhibits") at Exhibit VE-16 at 37 (P.R. 346; C.R. 312, 362). Commerce's sales denominator is [                ]. *Administrative Review of Phosphate Fertilizers from Morocco*: OCP S.A. Calculation Worksheet for the Final Results (Nov. 2, 2023) at Tab "Denominators" (C.R. 409).

and specific.  Instead, OCP contests application of AFA to assign a CVD rate for this refund

when the data to calculate that rate is on the record.

Mosaic asserts that Commerce's regulations allow the agency discretion to reject

"untimely filed questionnaire responses," and that Commerce may do so at verification when

corrections are submitted pertaining to information not contained in prior questionnaire

responses.  *See* Mosaic Resp. at 8.  However, OCP's reporting of the OFPPT refund was, in fact,

a correction to information contained in its initial questionnaire response—the reporting of any

other benefits received.  *See* IQR at 129–141 (P.R. 76; C.R. 8).  Even if Commerce retains

discretion to reject certain information, Commerce cannot do so in an arbitrary or capricious

manner that ignores evidence.  Categorically rejecting a small tax refund—the amount of which

Commerce examined in-person in Morocco—and then applying AFA to that refund to

exponentially inflate the underlying CVD rate is manifestly capricious.  *See* Verification Report

at 12 (P.R. 349; C.R. 399); *see also Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm

Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (an agency acts arbitrarily and capriciously where it

"entirely fail{s} to consider an important aspect of the problem, offer{s} an explanation for its

decision that runs counter to the evidence before the agency").

### B.    The Government and Mosaic Fail to Rebut OCP's Argument that Rejection of the OFPPT Refund as a Minor Correction Is Inconsistent with Commerce's Practice.

Commerce's rejection of OCP's minor correction was arbitrary.  OCP Br. at 18–19.  In

*Crystalline Silicon Photovoltaic Products from China* ("*CSPP*"), Commerce accepted multiple

grants that were presented as minor corrections during verification and described by the

respondent as "program{s}" that it "missed" in its "original response."  *See* Memorandum from

Justin M. Neuman and Gene H. Calvert, through Mark H. Hoadley, to The File, *CVD*

*Investigation of CSPP from China: Verification of the Questionnaire Responses Submitted by Wuxi Suntech Power Co., and Cross-Owned Companies* (Oct. 3, 2014) at 11; *CSPP from China: Minor Corrections—Wuxi Suntech Power Co.*, (Aug. 28, 2014) at 6.  The Government attempts to distinguish *CSPP* on the basis that "the respondent had not received any unreported income pursuant to the grant{sic} during the period of review."  Gov't Resp. at 13.  However, Commerce expressly noted in *CSPP* that it countervailed two of the new grants submitted as minor corrections and used the reported grant amounts to calculate the CVD rate.  *See CSPP from China: Final Determination Calculations for Wuxi Suntech Power Co.* (Dec. 15, 2014) at 9 ("{W}e are countervailing numerous small grants . . . . These include two additional grants reported by {respondent} as minor corrections.") (citations omitted).

In *CVD Investigation of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China* ("*Tires*"), Commerce accepted as minor corrections "several unreported grants in certain sub-ledgers of . . . charts of accounts."  *See Tires from China: Final Affirmative Determination*, 80 Fed. Reg. 34,888 (June 18, 2015), and accompanying IDM at 19–20.  The Government attempts to distinguish *Tires* by arguing that the respondent "***had already*** timely identified multiple grants in its questionnaire responses, but discovered a few additional grants while preparing for verification."  Gov't Resp. at 13–14 (emphasis in original).  Mosaic makes a similar argument.  Mosaic Resp. at 12.  Yet, OCP too had already reported numerous tax-related programs in its questionnaire responses before reporting the OFPPT tax refund as a minor correction.  *See, e.g.*, IQR at 21, 36, 54, 129 (P.R. 76; C.R. 8).

The Government and Mosaic argue that in *1-Hydroxyethylidene-1, 1-Diphosphonic Acid from China*  ("*Acid*"), the 14 unreported grants accepted as minor corrections at verification are distinguishable from the OFPPT refund because the grants involved were "the same kind of

grants already reported."  Gov't Resp. at 13 (citing Memorandum from Matthew Renkey and

Javier Barrientos, through Paul Walker, to The File, *Verification of the Questionnaire Responses*

*of Shandong Taihe Chemicals Co., and Shandong Taihe Water Treatment Technologies Co.* (Jan.

10, 2017) at 2.  Mosaic Resp. at 11–12.  The Government and Mosaic advance a position here

that Commerce never endorsed in *Acid*.  Other cases similarly confirm that the Government and

Mosaic misrepresent Commerce's practice.  *See Bottom Mount Combination Refrigerator-*

*Freezers from the Republic of Korea*, 77 Fed. Reg. 17,410 (Mar. 26, 2012), and accompanying

IDM at 79–84 (declining to apply AFA to grants discovered at verification because "the

Department was able to confirm the amount of the grants received" and "to obtain the

appropriate sales denominator required to calculate the benefit conferred under this program");

*Certain Oil Country Tubular Goods from China*, 74 Fed. Reg. 64,045 (Dec. 7, 2009), and

accompanying IDM at 24 (analyzing benefit information for a grant discovered at verification to

determine its benefit rate was *de minimis*).

 Cases cited by the Government in support of its position are inapposite.  Gov't Resp. at

14.  *Truck and Bus Tires* involved *40* previously unreported grants as well as additional forms of

financing, the "magnitude" of which exceeded "what can be considered 'minor'."  *See Truck and*

*Bus Tires from China: Final Affirmative CVD Determination,* 82 Fed. Reg. 8,606 (Jan. 27,

2017), and accompanying IDM at 15, 23, 60.  In *Ripe Olives*, Commerce rejected information

about unreported grants amounting "to an additional 40 percent, by value, in reported benefits."

*Ripe Olives from Spain: Final Affirmative CVD Determination*, 83 Fed. Reg. 28,186 (June 18,

2018), and accompanying IDM at 76.  In *Certain Polyethylene Terephthalate Resin China*,

Commerce accepted six of nine unreported grants as minor corrections, some for which the

Department issued supplemental questionnaires to collect necessary information, "consistent

Consol. Ct. No. 23-00246

with the Department's practice." *See Certain Polyethylene Terephthalate Resin from China: Final CVD Determination*, 81 Fed. Reg. 13,337 (Mar. 14, 2016), and accompanying IDM at 19, 53.

> ### C.    The Government and Mosaic Fail to Rebut that the Record Does Not Support a Facts Available Determination or Application of Adverse Inferences.

None of the factual predicates for facts available are present in this review.  OCP Br. at 20–22.  The Government incorrectly argues that use of facts available was necessary to fill a gap in the record caused by OCP's failure to provide information by established deadlines, which "significantly impeded Commerce's investigation by preventing Commerce from fully investigating the program."  Gov't Resp. at 15–16.  This argument overlooks that the information necessary to calculate the CVD rate for the OFPPT refund was timely submitted as a minor correction, examined by Commerce, and is on the record.  *See supra* at Section I.A.

OCP also explained that adverse inferences for the OFPPT refund is contrary to law because, by voluntarily disclosing this small refund at the beginning of verification, OCP did not fail to cooperate.  OCP Br. at 22–25.  The Government insists AFA is appropriate because OCP failed to act to the "best of its ability" and put forth its "maximum effort."  Gov't Resp. at 17.  Mosaic claims that "{i}f OCP had been sufficiently diligent earlier in the proceeding, then it would have discovered the subsidy program . . . . Because this did not happen, Commerce correctly applied AFA."  Mosaic Resp. at 17–18.  Such circular reasoning is an impermissible basis on which to apply AFA.  *See Steel Auth. of India v. United States*, 25 CIT 482, 488, 149 F.Supp.2d 921, 930 (2001) ("In making its determination that an interested party did not act 'to the best of its ability,' ***the Department cannot merely recite the relevant standard or repeat its***

*facts available finding*.") (emphasis added) (citing *Borden, Inc. v. United States,* 22 CIT 233, 260, 4 F.Supp.2d 1221, 1246 (1998)).

OCP explained that it overlooked this small refund, not because of a failure to cooperate, but because of the manner in which this refund was paid and the account to which it was booked. OCP Br. at 6–7, 16–17. The Government and Mosaic respond that OCP's oversight demonstrates that OCP failed to meet the "best of its ability" standard—***simply because the oversight occurred***. Gov't Resp. at 17; Mosaic Resp. at 17–18. However, the Court has explained that the law does not require perfection, and a respondent may overlook a particular request without Commerce applying AFA. *CITIC Trading Co. v. United States*, 27 CIT 356, 371–372 (2003); *see also Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (2003) (the "best of its ability" standard "does not require perfection and recognizes that mistakes sometimes occur"). Here, the totality of the facts, including the small amount of the refund, the unusual method of payment and booking, and OCP's voluntary disclosure at the beginning of verification simply do not support that OCP failed to cooperate. This conclusion is consistent with the best reading of the Statute. *Loper Bright Enters. v .Raimondo*, 144 S. Ct. 2244, 2266 (2024).

**D.    The Government and Mosaic Fail to Establish that the Magnitude of the AFA Rate Applied by Commerce Is Supported by Evidence and Otherwise in Accordance with Law.**

The evidence does not support Commerce's decision to select an AFA rate [    ] times greater than the maximum possible CVD rate for the OFPPT refund. OCP Br. at 25–26. The Government's and Mosaic's claim that Commerce may select a rate without regard to the evidence has been soundly rejected. *See* Gov't Resp. at 19; Mosaic Resp. at 19. The Federal Circuit confirmed this year that Commerce must select AFA rates that provide "***a reasonably accurate estimate of the respondent's actual rate***, albeit with some built-in increase intended as

a deterrent to non-compliance." *See Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1086 (Fed. Cir. 2025) (emphasis added) (citation omitted).  This standard strikes the correct balance between accuracy, deterrence, and the dual statutory guides found in 19 U.S.C. § 1677e(d), establishing that, while Commerce is "not required to estimate what the rate would have been if the relevant party had cooperated or to demonstrate that the rate chosen reflects an alleged commercial reality of the interested party," it must evaluate the situation that resulted in Commerce using adverse inferences in selecting the rate to use as AFA.  *Id*. (internal quotation marks omitted).

Commerce failed to "consider the totality of the circumstances in selecting an AFA rate, including, if relevant, the seriousness of the conduct of the uncooperative party."  OCP Br. at 25–26 (*citing BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1302 (Fed. Cir. 2019)).  The Government's claim that there is nothing wrong with selecting an AFA rate [   ] times greater than the maximum rate established on the record fails to engage with the totality of the evidence.  Gov't Br. at 19–20.  This evidence includes the small amount of the OFPPT refund, OCP's reasonable explanation for initially overlooking this refund and then voluntarily disclosing it as a minor correction, and the maximum effort OCP put forth throughout the review in submitting 16,550 pages of verified information.  OCP Br. at 23.  Based on these facts, the AFA rate selected by Commerce is incontrovertibly unreasonable and cannot be affirmed.

## II.    Commerce's *De Facto* Specificity Determination for Reductions in Tax Fines and Penalties Is Unsupported by Substantial Evidence and Otherwise Contrary to Law.

Commerce's *de facto* specificity analysis for reductions in tax fines and penalties is unsupported by substantial evidence and otherwise contrary to law.  Commerce failed to analyze the diversification of economic activities within Morocco and failed to consider OCP's size within the Moroccan economy.  OCP Br. 26–35.  The Government and Mosaic disagree, arguing

Consol. Ct. No. 23-00246

Commerce took account of economic diversification within Morocco, deemed OCP's size irrelevant to specificity, and found OCP was a disproportionate user under 19 U.S.C. § 1677(5A)(D)(iii)(III). Gov't Resp. at 23–35; Mosaic Resp. at 22–40. These arguments are meritless.

This Court rejected Commerce's *de facto* specificity determination based on disproportionate use in the redetermination of the Investigation segment of this CVD proceeding. *Mosaic II*, 744 F.Supp.3d at 1379–80. Finding Commerce's determination "absurd" given the widespread availability and use of the program, this Court explained that Commerce failed to distinguish between economy-wide subsidies and those for discrete segments, and failed to adhere to the statutory directive to consider the diversification of economic activities within Morocco. *Id.* Attempting to sidestep this, the Government claims that *Mosaic II* is inapplicable here. Gov't Resp. at 24, n.6. But as in *Mosaic II*, the reductions here remain widely available to taxpayers in Morocco, and Commerce used the same flawed "simple average" methodology to find disproportionate use that this Court rejected. *Id.* at 24; *Phosphate Fertilizers from Morocco: Final Results of CVD Administrative Review*, 88 Fed. Reg. 76,726 (Nov. 7, 2023) ("*Final Results*") (P.R. 374), and accompanying Issues and Decision Memorandum ("IDM") at 47–48 (P.R. 370). *Mosaic II* is directly applicable.

Mosaic concedes *Mosaic II* is instructive, but incorrectly claims that Commerce's disproportionality analysis conforms with *Mosaic II*. Mosaic Resp. at 30. Not so. Because Commerce did not consider OCP's large size within Morocco's economy or demonstrate that OCP received "some preferential treatment or other atypical benefit" from this widely available program, Commerce's determination that OCP was a disproportionate user of the program is not supported by substantial evidence and is unlawful. *See Mosaic II*, 744 F.Supp.3d at 1380.

Consol. Ct. No. 23-00246

> **A.    The Government and Mosaic Fail to Establish that Commerce Took Account of the Diversification of Economic Activities Within Morocco in Its *De Facto* Specificity Determination.**

The law requires Commerce to take into account the extent of diversification of economic activities within the granting authority in conducting a *de facto* specificity determination.  OCP Br. at 27–28.  However, Commerce never did, and instead made only a cursory observation regarding the number of sectors in Morocco.  *Id.* at 28–29.  Indeed, the Government implicitly concedes that Commerce did not meaningfully consider economic diversification as the law requires when it states that Commerce understood this factor "not to be instructive."  Gov't Resp. at 26.  Mosaic asserts that Commerce's economic diversification analysis was "central to" Commerce's analysis, but points only to the placement of that purported analysis in proximity to Commerce's specificity determination.  Mosaic Resp. at 28.  Mosaic offers no explanation of how Commerce's supposed economic diversification analysis was actually connected to, or used to inform, its specificity analysis.

Commerce's analysis of the diversification of economic activities also fails as an evidentiary matter because Commerce relied on a simplistic observation of the number of sectors in Morocco, without considering the relative concentration of activity within those sectors.  OCP Br. at 28.  Neither the Government nor Mosaic contests that Commerce failed to consider relative economic concentration.  The Government asserts that OCP failed to exhaust administrative remedies with respect to this argument.  Gov't Resp. at 28.  However, Commerce's purported economic diversification analysis occurred for the first time in the *Final Results*, meaning OCP's first opportunity to identify flaws in Commerce's analysis was before this Court, and exhaustion was not required.  *See Qingdao Taifa Grp. Co. v. United States*, 33 CIT 1090, 1092–93, 637 F.Supp.2d 1231, 1236 (2009) (a party "may seek judicial review of an

issue that it did not raise in a case brief if Commerce did not address the issue until its final decision").

Arguments that OCP provides no statutory basis for the requirement that Commerce must consider relative concentration of economic activities also miss the mark. Gov't Resp. at 28–29; Mosaic Resp. at 29. Any purported analysis of diversification that does not consider economic concentration fails to adhere to any reasonable reading of the Statute, let alone the best reading. *Loper Bright Enters*, 144 S. Ct. at 2266. It also fails ***as an evidentiary matter***. Finding a number of sectors exist within an economy, without considering the level of activity within each of those sectors, says nothing about the level of diversification of economic activities. The mere existence of other sectors cannot demonstrate that an economy is diverse. OCP Br. at 28. Commerce must therefore consider concentration of activity across sectors to analyze economic diversification.

### B. The Government and Mosaic Fail to Rebut OCP's Argument that Commerce Unlawfully Refused to Consider OCP's Size in Its Disproportionality Analysis.

Commerce was required to consider OCP's large size within the Moroccan economy as part of its disproportionality analysis, and its refusal to do so was contrary to law. *Id.* at 31–32. The Government incorrectly argues that OCP failed to exhaust administrative remedies with respect to this argument, Gov't Resp. at 28, 32, ignoring that OCP ***did*** raise this argument before Commerce. OCP Case Br. at 29–30 (P.R. 356; C.R. 403) (explaining OCP's large size means its reductions were not disproportionately large).

OCP explained that any reasonable interpretation of "disproportionate" in the Statute requires Commerce to consider OCP's size relative to other companies, as does the "best" reading of the Statute. OCP Br. at 31–32; *Loper Bright Enters*., 144 S. Ct. at 2266. Moreover,

14

the decision in *AK Steel*—stating that it would be untenable for Commerce to find a benefit

disproportionate merely because of the company's size—confirms OCP's position. OCP Br. at

31–32 (citing *AK Steel*, 192 F.3d 1367, 1385 (Fed. Cir. 1997)). OCP also relied on the Court's

conclusion in *Bethlehem Steel Corp. v. United States* that it "is anathema to the purpose of

{CVD} laws" to find specificity based solely on a disparity in the benefit received. 25 CIT 307,

322, 140 F.Supp.2d 1354, 1369 (2001); OCP Br. at 32. In response, neither the Government nor

Mosaic contests that the term "disproportionate" requires Commerce to consider OCP's relative

size to other companies. Instead, they distort the facts and findings in *AK Steel* and *Bethlehem*

*Steel*, in an unsuccessful attempt to assert that those cases are inapposite. *See* Gov't Resp. at 30–

33; Mosaic Resp. at 32–34.

The Government and Mosaic contend that *AK Steel* establishes only that Commerce's

disproportionality analysis is fact-dependent, and the case is inapposite because the respondent

"received essentially the ***same*** amount of subsidy benefits as the average beneficiaries," while

Commerce determined the value of reductions received by OCP far exceeded the average

amount.[2] Mosaic Resp. at 32–33 (emphasis in original); *see also* Gov't Resp. at 30–31. Their

argument elides crucial facts regarding the disproportionality analysis affirmed in *AK Steel.*

In the underlying decision reviewed in *AK Steel*, Commerce examined disproportionate

use of a tax reduction program pertaining to the revaluation of assets. *AK Steel* at 1382–83. In

its disproportionality analysis, Commerce declined to consider the absolute value of the

respondent's tax savings, and instead compared the ***percentage change*** in asset value for the

---

[2] Mosaic's assertion that *AK Steel* analyzed the law before the legal requirement to consider the diversification of economic activities was added is irrelevant. As Mosaic concedes, *AK Steel* "speaks to the proper interpretation of 'disproportionality,'" and the relevant statutory language with respect to that concept did not change. Mosaic Resp. at 25, n.2.

respondent with that obtained by other companies. Br. for the Defendant-Appellee, the United States, *AK Steel* (Nos. 97-1116, 97-1169, 97-1200), 1997 WL 33493457, at \*57–58 (June 20, 1997) ("Gov't Resp. in *AK Steel*"). In defending this approach at the Federal Circuit, the Government explained that using "percentage change information" in this way "is highly probative . . . with respect to a tax program," because it enables Commerce to "distinguish between general and specifically targeted tax schemes without penalizing companies due to their profits or size." *Id.* at \*58. The Government also stated that "reliance upon the absolute taxes paid would penalize companies that paid taxes in proportion to its aggregate income and profit. This is simply not how Congress intended the countervailing duty statute to apply." Id. at \*57. The Federal Circuit affirmed this approach which explicitly accounted for the respondent's size in the economy, noting that it avoided the "untenable result" of finding a benefit conferred to be disproportionate "merely because of the size of the company." *AK Steel,* 192 F.3d at 1385.

The Government's reasoning in *AK Steel*, affirmed by the Federal Circuit, is directly applicable here. Like the respondent in *AK Steel*, OCP's size directly impacts how Commerce should have evaluated disproportionality. Because tax fines and penalties are generally assessed based on a percentage of the taxes owed, fines and penalties assessed against a large company like OCP will be larger relative to other companies, as are the corresponding reductions. OCP Br. at 33. Ignoring these facts, Commerce adopted a methodology fundamentally inconsistent with the approach affirmed in *AK Steel* when it based its disproportionate analysis on the absolute value of OCP's reductions compared to other companies and, in the words of the Government in *AK Steel*, thereby "penalize{ed} {OCP} due to {its} profits or size" which is "simply not how Congress intended the countervailing duty statute to apply." Gov't Resp. in *AK Steel,* 1997 WL 33493457 at \*57.

As these cases demonstrate, and more recent decisions by the Court confirm, "receipt of a greater monetary benefit . . . than others is not determinative of disproportionality" and Commerce is required to show that an enterprise or industry "is favored in some way (i.e., it receives more than its fair share)." *Hyundai Steel Co.*, 745 F.Supp.3d at 1351–53. Commerce made no effort to make such a showing here. Contrarily, evidence demonstrated that the GOM did not exercise its discretion in a preferential manner towards OCP because OCP received [

]% in value of the total reductions granted in 2021, while it generated sales accounting for more than [    ] times that percentage of Moroccan GDP. *See* OCP Br. at 30.

The Government and Mosaic contend *Bethlehem Steel* is inapplicable because Commerce analyzed disproportionality in that case on an industry (rather than an enterprise) basis. However, they offer no support for the assertion that the interpretation of "disproportionately" changes depending on application to an industry or enterprise, nor does the Statute provide such a distinction. *See* Gov't Resp. at 32; Mosaic Resp. at 33; *see also* 19 U.S.C. § 1677(5A)(D)(iii).

In addition to this case law, Commerce's practice confirms it was required to consider OCP's size in its disproportionality analysis. OCP Br. at 34–35. The Government and Mosaic seek to distinguish several of the decisions cited by OCP by emphasizing immaterial differences (including whether the specificity determination was made on an industry or enterprise basis), while failing to explain how those differences explain why Commerce considered relative company size in its prior disproportionality analyses but not here. Gov't Resp. at 34; Mosaic Resp. at 37–38.

While Mosaic cites to *Sugar* to support Commerce's simple average approach to disproportionate use, Commerce acknowledged in that case that it "is always true" that at least one user will receive a greater benefit than the average, such that the agency's disproportionately

analysis was based on the fact that the respondent "received a significantly larger percentage of the benefits." *Sugar from Mexico: Final Affirmative Determination in the CVD Investigation*, 80 Fed. Reg. 57,337 (Sept. 16, 2015), and accompanying IDM at 43. Here, where OCP received [          ]% of reductions granted during the POR, OCP did not receive a significantly larger percentage of benefits. OCP Br. at 29–30.

Mosaic also relies on *Large Civil Aircraft* to argue that OCP's large size "does not shield it" from a disproportionality finding. Mosaic Resp. at 38. However, in that case, Commerce found the argument against specificity lacked evidence, whereas here, OCP cited abundant evidence that its size explained the amount of reductions it received. *Large Civil Aircraft from Canada: Final Affirmative CVD Determination*, 82 Fed. Reg. 61,252 (Dec. 27, 2017), and accompanying IDM at 76; OCP Br. at 33.

In response to robust evidence demonstrating that a uniquely large company such as OCP will receive more reductions, OCP Br. at 33, the Government inexplicably points to Commerce's redetermination in the Investigation—a different segment of this proceeding with a separate record—to argue the record evidence *of this review* is insufficient. Govt. Resp. at 33 (citing Final Results of Redetermination Pursuant to Court Remand, *Mosaic I*, No. 21-00116, at 32 (Jan. 12, 2024), ("*Investigation Remand Redetermination*"). Putting aside that this Court found that Commerce's *de facto* specificity determination in that redetermination "defies logic and common sense," *Mosaic II*, 744 F.Supp.3d at 1380, the fact remains that—in this review—Commerce never evaluated the evidence demonstrating OCP received more reductions because of its size.

Mosaic argues that annual fluctuations in reductions OCP received demonstrate OCP did not incur either tax fines and penalties, or reductions, in proportion to its contribution to GDP. Mosaic Resp. at 34–35. But OCP has not argued that reductions in tax fine and penalties are

received in exact proportion to contribution to GDP.  Instead, OCP has explained that a uniquely large company like OCP—demonstrated through OCP's contribution to GDP—generally owes taxes greater in magnitude than those paid by other companies.  OCP Br. at 33.  Consequently, because tax fines and penalties are generally assessed based on a percentage of the taxes owed, fines and penalties assessed against a uniquely large company such as OCP will also generally be larger relative to other companies, as are the corresponding reductions.  *Id.*

Mosaic also focuses on Commerce's finding that OCP received a total amount of reductions that was "roughly 900 times larger than the average amount."  Mosaic Resp. at 31. However, this figure is the result of Commerce's flawed simple average approach—already deemed insufficient as a matter of law.  *Mosaic II*, 744 F.Supp.3d at 1379-80.  Because this simple average approach does not account for OCP's large size and ignores that these reductions are widely available within the Moroccan economy, it does not establish disproportionate use and should be rejected as unsupported by record evidence and contrary to law.  *Id.*

## III.   Commerce Unlawfully Investigated "Other Benefits."

As OCP explained, Commerce acted unlawfully when it sought information for programs it had previously determined to ***not*** be countervailable subsidies, and when it demanded information from OCP regarding "other benefits" received from the GOM.  *See* OCP Br. at 36– 37.  In response, the Government and Mosaic rely heavily on this Court's prior ruling in *Mosaic I* to assert that the Court already rejected these arguments.  Gov't Resp. at 20–21; Mosaic Resp. at 40–41.  However, the facts here are materially different from *Mosaic I* because, at the time Commerce sought information in this review, the available evidence affirmatively demonstrated that the purported programs Commerce asked about were not countervailable

Consol. Ct. No. 23-00246

subsidies.  Under these circumstances, seeking such information is unsupported by record evidence and otherwise contrary to law.

Unlike in the Investigation when Commerce had no information regarding the countervailability of any programs it identified through use of the "other benefits" question, Commerce had substantially more information when it issued the initial questionnaire here including, for example, that two purported programs—Provision of Rail Transport Services ("Rail") and Direct Loans ("Loans")—were not countervailable subsidies.  OCP Case Br. at 41–44 (P.R. 356; C.R. 403) (citing Memorandum to Joseph A. Laroski Jr. from James Maeder, *Post-Preliminary Determination of CVD Investigation:  Phosphate Fertilizers from Morocco* (Jan. 6, 2021) ("Inv. PPD") at 12 and *Phosphate Fertilizers from Morocco: Final Affirmative CVD Determination*, 86 Fed. Reg. 9,482 (Feb. 16, 2021), and accompanying IDM ("Inv. IDM") at 6–7 and 64–65).  Mosaic does not contest this fact, nor does the Government with respect to Loans.  The Government contests this fact only with respect to Rail, arguing that Commerce did not find this purported program not to be countervailable, but instead only determined that there was no measurable benefit during the period of investigation.  Gov't Resp. at 23.  The Government misstates the facts.

In finding Rail not countervailable, Commerce *did* examine all three elements of a countervailable subsidy—financial contribution, specificity, and benefit—for Rail.  Inv. PPD at 11–14.  In any event, as the Government concedes, Commerce found that Rail did not provide a benefit to OCP and, because a financial contribution which does not provide a benefit does not meet the statutory definition of a subsidy, let alone a ***countervailable*** subsidy—the effect of Commerce's benefit determination alone was to find that the Rail program was not a

Consol. Ct. No. 23-00246

countervailable subsidy.  19 U.S.C. § 1677(5)(B); s*ee also* Inv. IDM at 65 (demonstrating Commerce made a similar no benefit finding for Loans).

Commerce's prior determinations with respect to Rail and Loans are an important distinction from the facts presented in *Mosaic I*.  That earlier opinion related to an Investigation where there were no prior findings whether purported programs were, or were not, countervailable subsidies.  *Mosaic I*, 659 F.Supp.3d at 1290, 1312–14.  Here—where Commerce's prior determinations demonstrated that Rail and Loans were not countervailable subsidies—Commerce not only lacked the factual predicate to investigate these purported programs, but faced evidence that ***affirmatively contradicted*** Commerce's decision to continue investigating Rail and Loans.  Commerce's decision to nonetheless seek such information clearly was not supported by substantial evidence and was thus contrary to law.  19 U.S.C. § 1516a(b)(1)(B)(i).  Furthermore, Commerce's request in the face of such contradictory evidence confirms that the purported programs to which the request related lacked any "appearance" of a being countervailable subsidies, also demonstrating that Commerce acted in violation of the law.  *See* OCP Br. at 36 (citing 19 U.S.C. § 1677d; 19 C.F.R. § 351.311).

Also not addressed by the Court in *Mosaic I* is the fact that Commerce's decision to seek information about purported programs it previously determined were not countervailable is contrary to its practice of declining to investigate programs it has already determined not to be countervailable, absent new information.  *See, e.g.*, *PPG Industs. Inc. v. United States*, 978 F.2d 1232, 1242 (Fed. Cir. 1992) (describing Commerce's longstanding practice of not reinvestigating a program determined not to be countervailable absent new evidence that would justify reconsideration of a prior finding); *KG Dongbu Steel Co., v. United States*, Ct. No. 22-00047, 2025 WL 227790 at *5, (Ct. Int'l Trade Jan. 17, 2025) (rejecting Commerce's argument that it

21

Consol. Ct. No. 23-00246

can reevaluate benefit during each period of review without new information); *KG Dongbu Steel Co. v. United States*, 695 F.Supp.3d 1338, 1343, 1347-51 (Ct. Int'l Trade 2024); *see also Initiation of CVD Investigation; Fresh, Chilled, and Frozen Pork from Canada*, 54 Fed. Reg. 5537, 5539 (Feb. 3, 1989) (Commerce declined to initiate investigations into three programs it previously found conferred no benefit). By failing to provide a reasonable basis for departing from this practice, Commerce acted arbitrarily, and therefore unlawfully. *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1377 (Fed. Cir. 2007) (explaining that an agency must adequately explain the reason for its reversal in policy when it decides to change course); *JTEKT Corp. v. United States*, 33 CIT 1797, 1831–32, 675 F.Supp.2d 1206, 1238 (2009) (explaining that Commerce's actions are "arbitrary" when they differ in similar circumstances absent reasonable explanation).

The Government and Mosaic argue that Commerce's "other benefits" question is reasonable and lawful because the Statute provides Commerce with broad investigative discretion to "discover" practices that could potentially constitute a countervailable subsidy. Gov't Resp. at 20–22; Mosaic Resp. at 40–44. These arguments rely on a misreading of the Statute. Although OCP understands from *Mosaic I* that this Court disagrees, OCP respectfully notes that this decision is not yet final and conclusive and asserts again that Commerce must possess information demonstrating the "appearance" of a countervailable subsidy before seeking such information on unspecified programs for which no allegation has been made. *See* OCP Br. at 36–37. The Government cites no provision conferring upon Commerce an absolute power of "discovery" that supplements its investigatory powers that are subject to the limits of Section 1677d. No such separate power exists. Indeed, the Court has characterized Commerce's use of

other assistance questions as an exercise of Commerce's investigatory authority.  *See Changzhou Trina Solar Energy Co. v. United States*, 195 F.Supp.3d 1334, 1345 (Ct. Int'l Trade 2016).

In defending the "other benefits" question, Mosaic relies on inapposite decisions that did not address the question presented here.  Mosaic Resp. at 40–41, 43–44 (citing *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F.Supp.3d 1317 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 523 F.Supp.3d 1312 (Ct. Int'l Trade 2021)).  In *Jiangsu*, the Government of China refused to answer questions inquiring into potential subsidies that the respondent had ***already disclosed*** to Commerce.  *See* 405 F.Supp.3d at 1342-43.  Thus, *Jiangsu* did not address the question presented here:  whether it was permissible for Commerce to use its investigatory powers to demand information regarding purported programs for which it had no information whatsoever.

Similarly, *Guizhou Tyre* did not consider the issue of whether Commerce violated Section 1677d by investigating purported programs prior to making a threshold determination that they appear to be countervailable subsidies.  523 F.Supp.3d at 1338-41.  Moreover, the Government in *Guizhou Tyre* argued that Commerce had asked "specific" questions of the respondent beyond merely inquiring into "other subsidies," which is not the case here.  *See id.* at 1335.

The Court should find Commerce acted unlawfully when it investigated programs it previously determined to be not countervailable and demanded information regarding "other benefits."

## **CONCLUSION**

For the reasons above and in OCP's Opening Brief, OCP respectfully requests that the Court grant OCP's Rule 56.2 motion for judgment on the agency record.

**Consol. Ct. No. 23-00246**

Dated:  March 3, 2025

Respectfully submitted,

/s/ William R. Isasi
William R. Isasi
Kathleen McNulty
Wanyu Zhang
Julia Shults
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956


Micaela McMurrough
Hardeep Josan
Jordan B. Bakst
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue, 42nd Floor
New York, NY 10018

*Counsel to OCP S.A.*

**Consol. Ct. No. 23-00246**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the attached Reply Brief of Consolidated Plaintiff and Defendant-Intervenor OCP S.A., filed March 3, 2025, contains 6,886 words, including footnotes, and excluding the table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum word count limitation set forth in the Court's Standard Chambers Procedures.

/s/ William R. Isasi
William R. Isasi