C-714-001
Remand
Slip Op. 25-34
POR: 11/30/2020 – 12/31/2021
**Public Document**
E&C/OVIII: Team

*The Mosaic Company v. United States, OCP S.A.*
**Consol. Court No. 23-00246, Slip Op. 25-34 (CIT April 1, 2025)**
**Phosphate Fertilizers from the Kingdom of Morocco**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (Court) in *The Mosaic Company, v. United States*, *OCP S.A.*, Consol. Court No. 23-00246, Slip Op. 25-34 (CIT April 1, 2025) (*Remand Order*).  These final results of redetermination concern the *Final Results* of the first administrative review for the countervailing duty (CVD) order on phosphate fertilizers from the Kingdom of Morocco (Morocco).[1]  In its *Remand Order*, the Court directed Commerce to reconsider and correct its specificity determination with regards to the tax fine and penalty reduction program.[2]

As set forth in detail below, pursuant to the Court's *Remand Order*, Commerce had addressed parties' comments regarding Commerce's determination, under respectful protest,[3] determined that the Reduction in Tax Fines and Penalties program is not specific under section

---

[1] *See Phosphate Fertilizers from the Kingdom of Morocco:  Final Results of Countervailing Duty Determination*, 88 FR 76726 (November 7, 2023) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See The Mosaic Company v. United States,* Slip Op. 25-34 (CIT April 1, 2025) (*Remand Order*) at 35-39.
[3] *See Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003) (*Viraj*).

771(5A) of the Act, and therefore not countervailable.[4] Based on this analysis, we calculated a revised 2.11 percent total *ad valorem* subsidy rate for OCP in the *Final Results*.[5]

## II. BACKGROUND

### A. Reduction in Tax Fines and Penalties

Background

In the *Final Results*, Commerce found that the Government of Morocco (GOM)'s reductions in OCP's tax fines and penalties are *de facto* specific, and that OCP was a disproportionate user of the program, under section 771(5A)(D)(iii)(III) of the Act.[6] Specifically, we found OCP received "a share of reductions that were roughly 900 times larger than the average amount received by a company in Morocco."[7] In the *Remand Order,* the Court remanded Commerce to reconsider its specificity determination for the reduction in tax fines and penalties program, stating that the determination is not in accordance with the limiting principle of the SAA, which sets forth that a broad-based, nationwide program does not satisfy the specificity requirement in the statute.[8] The Court stated, "{Commerce's} specificity determination does not accord with the limiting principle set forth in the SAA, in which Congress expressed its intent that a broad-based, nationwide program such as Morocco's procedure allowing relief from tax fines and penalties is not the type of program that satisfies the specificity requirement in the statute. Moreover, {Commerce's} disproportionality analysis wrongfully ignored highly probative evidence of OCP's relative size."[9] The Court noted that it

---

[4] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Remand," dated June 4, 2025 (Draft Remand Redetermination).
[5] *See Final Results,* 88 FR at 76726.
[6] *See Final Results* IDM at Comment 10.
[7] *See Remand Order* at 36.
[8] *Id.* at 39 (citing Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103.316, (SAA) at 929 (1994)).
[9] *See Remand Order* at 38-39 (citing *The Mosaic Company v. United States*, 744 F. Supp. 3d 1380 (CIT 2025) *(Mosaic II)*).

2

recognized in *Mosaic II*, the second remand for the investigation of the *Order*, that the recipients of tax penalty relief under the program could not be limited in number on an enterprise basis because there was no record evidence that eligibility or participation was limited in number on an enterprise or industry basis or that the actual beneficiaries constituted a discrete segment of the economy.[10] The Court, citing its decision in *Mosaic II*, concluded that Commerce had not reached a "valid factual finding" that OCP was a disproportionate user under section 771(5A)(D)(iii)(III) of the Act because Commerce's disproportionality analysis did not account for evidence of OCP's relative size and that tax fines and penalties are generally assessed based on a percentage of the taxes or fees owed.[11] Further, the Court concluded that the fact that the program allowed the benefit to be granted as a matter of discretion does not support an affirmative specificity finding.[12]

Analysis

Consistent with the *Remand Order* and our final remand redetermination in *Mosaic II*, we have reconsidered our determination that the GOM's reduction in tax fines and penalties program is *de facto* specific.[13] In the *Remand Order,* the CIT held that "Commerce has not reached a valid factual finding that OCP was a 'disproportionate' user of the program within the meaning of {section 771(5A)(D)(iii)(III) of the Act}" and that Commerce did not "demonstrate that OCP got some preferential treatment or other atypical benefit from the Moroccan government's administration of the widely available tax fine and penalty relief program."[14] Thus, the CIT held that our determination that OCP is a disproportionate user of the GOM's

---

[10] *Id*.
[11] *Id.* at 38.
[12] *Id.* at 37.
[13] *See Mosaic II,* 744 F. Supp. 3d at 1380.
[14] *See Remand Order* at 38.

3

reduction in tax fines and penalties program pursuant to section 771(5A)(D)(iii)(III) of the Act was contrary to law.

On remand, and upon reconsideration of the record evidence, we find that OCP was not a disproportionate user of this program. Further, we determine that the record evidence does not provide a basis for a finding that the program is *de facto* specific under any of the other criteria enumerated in section 771(5A)(D)(iii) of the Act. Consequently, we find, under respectful protest, that, during the period of review, the reduction in tax fines and penalties program is not specific and therefore not countervailable with respect to OCP.

## IV.    INTERESTED PARTY COMMENTS

On June 4, 2025, Commerce released its Draft Remand Redetermination to interested parties.[15] On June 11, 2025, The Mosaic Company (the petitioner), and OCP submitted timely comments on the Draft Remand Redetermination.[16]

### A.    Reduction in Tax Fines and Penalties

The following is a verbatim summary of arguments submitted by OCP. For further details, *see* OCP's Draft Remand Comments.[17]

*OCP's Comments*:

> {Commerce} is required to "take into account the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy,"[18] which the {Court} properly noted "is {an} indication that Congress did not consider a government benefit such as the one at issue here to be countervailable."[19] To adhere to the best, or even a reasonable reading of the Act,[20] and to conduct a meaningful analysis consistent with *Mosaic III*, the Department must consider the extent of diversification of economic activities within Morocco. Economic

---

[15] *See* Draft Remand Redetermination.
[16] *See* Petitioner's Letter, "Comments on Draft Remand Redetermination," dated June 11, 2025 (Petitioner's Draft Remand Comments); OCP's Letter, "OCP's Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 11, 2025 (OCP's Draft Remand Comments).
[17] *See* OCP's Draft Remand Comments at 2-11.
[18] *See* section 771(5A)(D)(iii) of the Tariff Act of 1930, as amended (the Act).
[19] *See Mosaic II*, 744 F. Supp. 3d at 1379-80.
[20] *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024) (*Loper Bright*).

activities in Morocco were largely concentrated in OCP and its consolidated companies, as demonstrated by the fact that OCP's annual revenue alone was equivalent to 6.6% of the country's Gross Domestic Product (GDP),[21] and by OCP's status as Morocco's largest corporate group by annual revenue and largest private sector employer in 2021.[22]

Second, the best reading, or any reasonable interpretation of "disproportionately large" in {section 771(5A)(D)(iii)(III) of the Act} requires {Commerce} to consider OCP's size relative to other companies in Morocco in determining whether the reductions that OCP received showed that OCP "received more than its fair share" or benefited "more than would be expected" to justify a finding of *de facto* specificity.[23] Because the Moroccan Tax Code assesses tax fines and penalties based on a percentage of taxes owed, a uniquely large taxpayer like OCP is likely to incur more tax fines and penalties, and thus more reductions in tax fines and penalties.[24] Record evidence demonstrates that despite having a significant amount of net taxable income, OCP received only "a miniscule percentage" of the total reductions granted to corporate taxpayers in 2021, which is in no way disproportionately large.[25]

Lastly, the {SAA} set forth a guiding principle that CVD duties should not be imposed where "because of the widespread availability and use of a subsidy, the benefit of the subsidy is spread throughout an economy."[26] Companies from a wide variety of sectors received reductions in 2021, including those, for example, in transport and storage, real estate, science, automobile repair, construction, finance and insurance, manufacturing, and arts, demonstrating that the reductions at issue are not specific.[27]

---

[21] *See* GOM's Letter, "Questionnaire Response of the Government of the Kingdom of Morocco," dated August 22, 2022 (GOM IQR) at Exhibit I-1 (showing Morocco's 2021 GDP as 1,284.2 billion Moroccan Dirham (MAD)); *see also* OCP's Letter, "OCP S.A. Section III Initial Questionnaire Response," dated August 22, 2022 (OCP IQR) at Exhibit GEN-8(j) (showing OCP's 2021 revenue as 84,300 million MAD).

[22] *See Remand Order* at 36–37 ("OCP points to record evidence that it and its consolidated companies 'were Morocco's largest corporate group by annual revenue in 2021, with sales equivalent to 6.6% of Morocco's GDP {gross domestic product}.'"); *see also* GOM's Letter, "The Government of the Kingdom of Morocco's Response to Commerce's First Supplemental Questionnaire," dated December 7, 2022 (GOM 1SQR) at 4–5 & Exhibit SUPP-1 (Part C).

[23] *See Loper Bright*, 144 S. Ct. at 2266; *see also Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345, 1353 (CIT 2024) ("Disproportionality requires that an enterprise or industry is favored in some way (*i.e.*, it receives more than its fair share). Commerce must explain how the combined industries it identifies benefit more than would be expected").

[24] *See* GOM IQR, at Vol. II at Exhibit II-2 (Articles 200 and 208) (indicating that employers are subject to a 5% surcharge for filing an amendment of payroll tax after the deadline and additional surcharges at 0.5%, 5% and 20% for delayed payment).

[25] *See Remand Order* at 38 ("OCP received only a miniscule percentage of the total value of the reductions"); *see also* OCP IQR at 8 (Table Supp-2) (showing total reductions granted by the GOM to all companies in 2021) and Exhibit GEN-1(a) (showing OCP's 2021 net taxable income); and GOM 1SQR at 6 (Table Supp-1) (showing total reductions received by OCP in 2021).

[26] *See Mosaic II*, 744 F. Supp. 3d at 1379 (citing SAA at 930).

[27] *See* GOM 1SQR at 13–14 (Table Supp-6) (showing that companies receiving reductions in 2021 belonged to a wide range of sectors).

The following is a verbatim summary of arguments submitted by Mosaic. For further details, *see* Mosaic's Draft Remand Comments.[28]

*Mosaic's Comments*:

> {Commerce}'s prior finding that this program is de facto specific because OCP is a disproportionate user of the program is in accordance with the plain language of the statute as well as the statute's legislative history and is more than adequately supported by the record. {Commerce} reasonably relied on the information that the GOM provided, namely the total number of actual subsidy recipients and the total amount of benefits, and the record shows that OCP received a benefit more than 900 times larger than the average subsidy recipient under this program. Moreover, the statute does not require {Commerce} to consider the relative size of a subsidy recipient, and the record of this review actually shows that OCP's reductions in tax fines and penalties in 2021 bore no relationship to its size, revenue, or total tax liability. {Commerce} should therefore continue to find that this program is de facto specific because OCP is a disproportionate user of the subsidy program.

**Commerce's Position:**

We disagree with Mosaic. Despite Mosaic's disagreement with the Court's holding, and its statement that Commerce was overly proscriptive in finding the reduction in tax fines and penalties program not *de facto* specific, Mosaic does not offer analysis or to point to record evidence that would allow Commerce to overcome the Court's objections. Although Mosaic argues that the Court's decision is erroneous because OCP's benefit was nearly 900 times larger than the typical benefit amount and demonstrates that the benefit of the subsidy program is concentrated in a "discrete segment of the economy," and that Commerce's determination did not violate the guiding principles of widespread availability and use for the specificity test described in the SAA, the Court expressly concluded that Commerce's *de facto* specificity determination based on disproportionate use under section 771(5A)(D)(iii)(III) of the Act "does not accord with the limiting principle set forth in the SAA," that there was no evidence that

---

[28] *See* OCP's Draft Remand Comments at 2-11.

6

potential recipients of the benefit (either "all taxpayer" or "those taxpayers receiving some form of penalty relief") constituted a discrete segment of the economy.[29] Moreover, while OCP argues that record evidence demonstrates that OCP's reductions in tax fines and penalties "bore no relationship to size, revenue, or total tax liability," the Court found that "{Commerce's} disproportionality analysis wrongfully ignored highly probative evidence of OCP's relative size."[30] Commerce is obligated to take action on remand that is consistent with the Court's remand order. Absent additional evidence or argument that would allow us to reconsider our specificity determination on a basis other than those already considered by the Court, we have no alternative available to us to find that this program is specific. Accordingly, under respectful protest, we continue to find on remand that the reduction in tax fines and penalties program is not specific, and therefore not countervailable.

## V.    FINAL RESULTS OF REDETERMINATION

Consistent with the *Remand Order*, we reconsidered our specificity determination with regard to the tax fine and penalty reduction program. Based on the foregoing explanation, we revised the subsidy rate calculations for mandatory respondent OCP. The revised CVD rates for the POR of November 30, 2020, through December 31, 2021, are listed in the chart below. Should the Court sustain these final results of redetermination, we intend to issue a *Timken*[31] notice with an amended final determination, because the rates for OCP and all other producers or exporters have been revised since the *Final Results*.[32]

---

[29] *See* Mosaic's Draft Remand Comments at 3-6; *see also Remand Order* at 37-38.
[30] *See* Mosaic's Draft Remand Comments at 6-7; *see also Remand Order* at 38-39.
[31] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).
[32] *See Final Results*, 88 FR at 76726.

| Company | Subsidy Rate in *Final Determination*[33] (percent *ad valorem*) | Subsidy Rate in Final Remand Redetermination (percent *ad valorem*) |
|---|---|---|
| OCP S.A. | 2.12 | 2.11 |

6/30/2025

X *Chris f Abbott*

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[33] *Id.*