# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| THE MOSAIC COMPANY,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>  and<br><br>OCP S.A.,<br><br>        Defendant-Intervenor,<br><br>  and<br><br>THE GOVERNMENT OF THE KINGDOM OF MOROCCO,<br><br>        Defendant-Intervenor. | Consol. Court No. 23-00246<br><br>**NON-CONFIDENTIAL VERSION**<br><br>**Business Proprietary Information Removed from Pages 5-9** |

## THE MOSAIC COMPANY'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION

David J. Ross
Stephanie E. Hartmann
Alexandra S. Maurer

Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6300
Facsimile: (202) 663-6363
stephanie.hartmann@wilmerhale.com

July 30, 2025                                        *Counsel for The Mosaic Company*

Case 1:23-cv-00246-TCS   Document 104   Filed 07/30/25   Page 2 of 15

**Consol. Court No. 23-00246**                           **NON-CONFIDENTIAL VERSION**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1
STANDARD OF REVIEW .................................................................................................. 1
ARGUMENT ......................................................................................................................... 3
   I.  Commerce's Original Determination that the Reduction in Tax Fines and Penalties Program is *De Facto* Specific is Reasonable, Supported by Substantial Evidence, and Otherwise in Accordance with Law .................................................................................. 3
CONCLUSION ................................................................................................................... 10

Case 1:23-cv-00246-TCS   Document 104   Filed 07/30/25   Page 3 of 15

Consol. Court No. 23-00246                               NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................................................1

19 U.S.C. § 1677(5A)(D)(iii)(I) .................................................................................7

19 U.S.C. § 1677(5A)(D)(iii)(III) ....................................................................3, 4 7

19 U.S.C. § 1677f(i)(3)(A) ........................................................................................2

**Cases**

*Acciai Speciali Terni, S.p.A. v. United States*, 26 C.I.T. 892,
    217 F. Supp. 2d 1345 (2002) ...............................................................................1

*Altx, Inc. v. United States*, 25 C.I.T. 1100, 167 F. Supp. 2d 1353 (2001) ...............2

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v.
    United States*, 589 F. Supp. 3d 1346 (Ct. Int'l Trade 2022), *aff'd*,
    102 F.4th 1252 (Fed. Cir. 2024) ..........................................................................6

*Changzhou Wujin Fine Chemical Factory Co. v. United States*,
    701 F.3d 1367 (Fed. Cir. 2012) ...........................................................................1

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016) ...............1

*Jiaxing Brother Fastener Co. v. United States*, 380 F. Supp. 3d 1343
    (Ct. Int'l Trade 2019) ..........................................................................................2

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm
    Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) ............................1, 2, 7

*NMB Singapore Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ...............2, 7

*RHP Bearings Ltd. v. United States*, 288 F.3d 1334 (Fed. Cir. 2002) .....................2

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) .............................2

*Wind Tower Trade Coalition v. United States*, 569 F. Supp. 3d 1221
    (Ct. Int'l Trade 2022) ..........................................................................................2

*Zhejiang DunAn Hetian Metal Co. v. United States*, 34 C.I.T. 408,
    707 F. Supp. 2d 1355 (2010), *vacated on other grounds*, 652 F.3d 1333
    (Fed. Cir. 2011) ...................................................................................................2

**Administrative Determinations**

*Alloy Magnesium from Canada: Final Results of Countervailing Duty*

Case 1:23-cv-00246-TCS   Document 104   Filed 07/30/25   Page 4 of 15

**Consol. Court No. 23-00246**                                              NON-CONFIDENTIAL VERSION

*New Shipper Review*, 68 Fed. Reg. 22,359 (Dep't Commerce Apr. 28, 2003),
and accompanying Issues and Decision Memorandum ..........................................................6

*Final Affirmative Countervailing Duty Determination: Certain Stainless Steel
Wire Rod From Italy*, 63 Fed. Reg. 40,474 (Dep't Commerce July 29, 1998) .....................6

*Sugar From Mexico: Final Affirmative Countervailing Duty Determination*,
80 Fed. Reg. 57,337 (Dep't Commerce Sept. 23, 2015), and accompanying
Issues and Decision Memorandum .......................................................................................6

Case 1:23-cv-00246-TCS    Document 104    Filed 07/30/25    Page 5 of 15

Consol. Court No. 23-00246                                NON-CONFIDENTIAL VERSION

# INTRODUCTION

Plaintiff and Consolidated Defendant-Intervenor The Mosaic Company ("Mosaic") respectfully submits these comments in opposition to the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand. *See* Final Results of Redetermination Pursuant to Ct. Remand (June 30, 2025), P.R.R. 5, ECF No. 100-1 ("Remand Determination").

# STANDARD OF REVIEW

In reviewing Commerce's CVD determinations, the Court will hold unlawful any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Acciai Speciali Terni, S.p.A. v. United States*, 26 C.I.T. 892, 893, 217 F. Supp. 2d 1345, 1346-47 (2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotations omitted)), taking into account "whatever in the record fairly detracts" from the weight of supportive evidence. *CS Wind Viet. Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (citation omitted). The substantial evidence standard also requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

This standard of review also encompasses the "arbitrary and capricious" standard established under the Administrative Procedure Act. *See Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974)). "{A}n agency action is arbitrary

Case 1:23-cv-00246-TCS   Document 104   Filed 07/30/25   Page 6 of 15

Consol. Court No. 23-00246　　　　　　　　　　　　NON-CONFIDENTIAL VERSION

when the agency offer{s} insufficient reasons for treating similar situations differently." *RHP Bearings Ltd. v. United States*, 288 F.3d 1334, 1347 (Fed. Cir. 2002) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)).  Thus, Commerce must treat like situations similarly and may not depart from a prior practice, unless "it provides a reasoned explanation for its change." *Jiaxing Brother Fastener Co. v. United States*, 380 F. Supp. 3d 1343, 1365 (Ct. Int'l Trade 2019) (citing *Rust v. Sullivan*, 500 U.S. 173, 187 (1991); *State Farm*, 463 U.S. at 42). Failure to consider an important aspect of the problem similarly renders a determination by Commerce arbitrary.  *State Farm*, 463 U.S. at 43; *see also Zhejiang DunAn Hetian Metal Co. v. United States*, 34 C.I.T. 408, 437-38, 707 F. Supp. 2d 1355, 1382 (2010), *vacated on other grounds*, 652 F.3d 1333 (Fed. Cir. 2011).  Agency determinations that ignore relevant statutory or regulatory language, or interpret that language contrary to its plain meaning, are also not in accordance with law.  *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1378, 1382-83 (Fed. Cir. 2001).

　　　　Finally, Commerce is required by law to provide in its final determination "an explanation of the basis for its determination that addresses relevant arguments{} made by interested parties." 19 U.S.C. § 1677f(i)(3)(A).  While the agency need not address every argument and piece of evidence, it must address significant arguments and evidence that seriously undermine its reasoning and conclusions.  *Altx, Inc. v. United States*, <u>25 C.I.T. 1100,</u> 1117-18, 167 F. Supp. 2d 1353, 1374 (2001).  Failure to do so renders its determination unlawful.  *See NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319-20 (Fed. Cir. 2009); *Wind Tower Trade Coalition v. United States*, 569 F. Supp. 3d 1221, 1241, 1259 (Ct. Int'l Trade 2022).

Case 1:23-cv-00246-TCS     Document 104     Filed 07/30/25     Page 7 of 15

Consol. Court No. 23-00246                                 NON-CONFIDENTIAL VERSION

# ARGUMENT

## I. Commerce's Original Determination that the Reduction in Tax Fines and Penalties Program is *De Facto* Specific is Reasonable, Supported by Substantial Evidence, and Otherwise in Accordance with Law

In the underlying proceeding, Commerce found that the Reduction in Tax Fines and Penalties program is *de facto* specific under section 771(5A)(D)(iii)(III) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1677(5A)(D)(iii)(III), because OCP received a disproportionately large amount of the subsidy during the period of review ("POR"). *Phosphate Fertilizers From the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 76,726 (Nov. 7, 2023) ("*Final Results*"), P.R. 374, and accompanying Issues and Decision Memorandum ("IDM"), cmt. 10, P.R. 370. This Court disagreed, however, stating that the Department's specificity finding "does not accord with the limiting principle set forth in the" Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"), "in which Congress expressed its intent that a broad-based, nationwide program such as Morocco's procedure allowing relief from tax fines and penalties is not the type of program that satisfies the specificity requirement in the statute." *The Mosaic Company v. United States*, Consol. Court No. 23-00246, Slip Op. 25-34 (C.I.T. Apr. 1, 2025), ECF No. 96 ("*Remand Order*") at 38-39. The Court also found that the Department's specificity finding "wrongfully ignored highly probative evidence of OCP's relative size." *Id.* at 39. The Court therefore instructed Commerce to reconsider its *de facto* specificity finding.

In the draft and final remand results, Commerce found that there is no other basis on the record to conclude that this program is *de facto* specific. Draft Results of Redetermination Pursuant to Court Remand (June 4, 2025) at 4, P.R.R. 1 ("Draft Remand Results"); Remand Determination at 7, P.R.R. 5 ("Absent additional evidence or argument that would allow us to reconsider our specificity determination on a basis other than those already considered by the

Court, we have no alternative available to us to find that this program is specific."). Commerce therefore found, under protest, that the program is not countervailable. Remand Determination at 7, P.R.R. 5. However, Mosaic respectfully submits that Commerce interpreted the Court's *Remand Order* in an unduly proscriptive manner as disallowing a specificity finding based on disproportionate use, and in so doing, unlawfully declined to consider additional record evidence that supports its original finding.

As the Court observed in the *Remand Order*, the SAA sets forth a "guiding principle" for the specificity test, *i.e.*, that it is "intended to function as a rule of reason and to avoid the imposition of countervailing duties in situations where, because of the widespread availability *and use* of a subsidy, the benefit of the subsidy is spread throughout an economy." *Remand Order* at 36 (citing SAA at 929-30). The Court held that, under this "guiding principle," "Commerce must distinguish between subsidies that are provided to or used by discrete segments of the economy and those . . . that distribute a benefit throughout the entire economy." *Id*. at 37.

Commerce's finding that this program is *de facto* specific because OCP is a disproportionate user of the program is more than adequately supported by the record and is in accordance with the plain language of the statute, as well as Congressional intent as expressed in the SAA. Although this particular subsidy program may be "widely available" to taxpayers in Morocco and have a large number of recipients, Commerce correctly found that the subsidy can still be disproportionately received by OCP, which is one of the explicit, textual bases for a finding of *de facto* specificity under the statute. *See* 19 U.S.C. § 1677(5A)(D)(iii)(III) ("Where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist . . . (III) An enterprise or industry receives a disproportionately large amount of the subsidy.") As Commerce correctly stated:

Consol. Court No. 23-00246                                        NON-CONFIDENTIAL VERSION

> {A}lthough the program may be *available* to all taxpayers, this fact does not necessarily nor automatically mean that it cannot be disproportionately *used* by certain companies. The SAA describes the original purpose of the specificity test, which is to serve 'as an initial screening mechanism to winnow out <u>only those foreign subsidies which truly are</u> broadly available and widely *used* throughout an economy.' A subsidy program can be both broadly available across an economy but used disproportionately by an enterprise or group of enterprises compared to others.

IDM at 48, P.R. 370 (emphasis added).[1]

Here, the record shows that although this subsidy program may be available to companies throughout the Moroccan economy that incurred tax fines or penalties, OCP received a benefit that was roughly *900* times greater than the average amount that other beneficiaries received. Specifically, the record shows that OCP received a total amount of [           ] in reductions in tax fines and penalties during the POR, as compared to the average amount received by other recipients of just ([           ]). *See* GOM's Letter, "Phosphate Fertilizers from the Kingdom of Morocco: The Government of the Kingdom of Morocco's Response to Commerce's First Supplemental Questionnaire" (Dec. 7, 2022) ("GOM 12/7/22 SQR") at 6, 8, P.R. 162, C.R. 154.

The record also shows that the amount of OCP's reductions in tax fines and penalties was consistently larger than the average subsidy amount over the prior three years, including more than 700 times greater in 2018 and more than 100 times greater in 2019:

| Year | Number of Companies Receiving Reductions | Cumulative Total Amount of Reductions (MAD) | Average Reduction per Recipient (MAD) | Total Amount of OCP's Reduction (MAD) | OCP's Reduction Amount (as multiple of average) |
|---|---|---|---|---|---|
| 2018 | 28,952 | [        ] | [        ] | [        ] | [        ] |

---

[1] While the Court quoted a portion of this discussion from the SAA, its quote did not include the underlined text. This text provides critical context for understanding Congress' intent in establishing the criteria for a finding of *de facto* specificity, as it demonstrates that the default expectation is that the specificity test will not "winnow out" most subsidies.

Case 1:23-cv-00246-TCS    Document 104    Filed 07/30/25    Page 10 of 15

BUSINESS PROPRIETARY
INFORMATION DELETED

Consol. Court No. 23-00246 　　　　　　　　　　　　　　　　　NON-CONFIDENTIAL VERSION

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2019 | 10,551 | [ | ] | [ | ] | [ | ] | [ | ] |
| 2020 | 9,920 | [ | ] | [ | ] | [ | ] | [ | ] |
| 2021 | 71,161 | [ | ] | [ | ] | [ | ] | [ | ] |

*Id.* at 6, 8.

The facts of this case are significantly more disproportionate than they were in the determination at issue in *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, which this Court and the Federal Circuit both affirmed. *See Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 589 F. Supp. 3d 1346, 1356 (Ct. Int'l Trade 2022), *aff'd*, 102 F.4th 1252 (Fed. Cir. 2024) (affirming Commerce's disproportionality finding where respondents received "between double and 83 times the average amount of assistance"). They are also consistent with the facts in many other proceedings where Commerce found disproportionality. *See, e.g., Alloy Magnesium from Canada: Final Results of Countervailing Duty New Shipper Review*, 68 Fed. Reg. 22,359 (Dep't Commerce Apr. 28, 2003), and accompanying Issues and Decision Memorandum at 14-15 (finding disproportionality where a respondent's grant was over 90 times larger than the typical grant amount); *Final Affirmative Countervailing Duty Determination: Certain Stainless Steel Wire Rod From Italy*, 63 Fed. Reg. 40,474, 40,486 (Dep't Commerce July 29, 1998) (finding disproportionality where a respondent "received far more than the average recipient"); *Sugar From Mexico: Final Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 57,337 (Dep't Commerce Sept. 23, 2015), and accompanying Issues and Decision Memorandum at 43 (finding disproportionality where respondents received "a significantly larger percentage of the benefits" than the average participating taxpayer). This record supports a finding that the *amount* of the subsidy that OCP received relative to the amount received by other actual subsidy recipients – *i.e.*, roughly 900

Case 1:23-cv-00246-TCS    Document 104    Filed 07/30/25    Page 11 of 15

BUSINESS PROPRIETARY
INFORMATION DELETED

Consol. Court No. 23-00246					NON-CONFIDENTIAL VERSION

times the amount received by the average user – is sufficiently disproportionate to show that the benefit of the subsidy program is concentrated in a "discrete segment of the economy."[2] Such a finding would accord with the Court's holding in the *Remand Order*.

The Court also held that "the Department's disproportionality analysis wrongfully ignored highly probative evidence of OCP's relative size" and "cited no evidence to support its assumptions that a company's total reduction in tax fines and penalties has no relationship to the total amount of its revenue or to the total taxes for which it is liable." *Remand Order* at 38-39. As an initial matter, the text of the statute does not require the Department to consider the relative size of a subsidy recipient, only whether an "enterprise or industry receives a disproportionately large amount of the subsidy." 19 U.S.C. § 1677(5A)(D)(iii)(III). Nonetheless, the record shows that OCP's reductions in tax fines and penalties bore no relationship to its size, revenue, or total tax liability. By failing to grapple with this evidence, Commerce ignored an important aspect of the problem, rendering the final remand results arbitrary and unsupported by substantial evidence. *State Farm*, 463 U.S. at 43; *NMB Sing. Ltd.*, 557 F.3d at 1319-20.

As Mosaic explained in its comments on Commerce's Draft Remand Results, OCP reported [    ] reductions in tax fines and penalties received during the POR: [



]. OCP's Letter, "Phosphate Fertilizer from the Kingdom of Morocco: OCP S.A. Section III Initial Questionnaire Response"

---

[2] Nonetheless, Mosaic respectfully submits that a finding that a subsidy is limited to a "discrete segment of the economy" is not a prerequisite for a finding of *de facto* specificity. To take an extreme example, if the record evidence showed that a given subsidy had been received by 10 out of 10,000 potentially eligible enterprises, the recipients would plainly be "limited in number" within the meaning of section 771(5A)(D)(iii)(I) of the Act, 19 U.S.C. § 1677(5A)(D)(iii)(I), even if they were spread broadly across the economy (*e.g.*, an aerospace manufacturer, a farming cooperative, a retailer, etc.).

Case 1:23-cv-00246-TCS   Document 104   Filed 07/30/25   Page 12 of 15
BUSINESS PROPRIETARY
INFORMATION DELETED

Consol. Court No. 23-00246                                         NON-CONFIDENTIAL VERSION

(Aug. 22, 2022) ("OCP IQR") at 49-50, Exhibits TAX-2(a) – TAX-5, P.R. 76, 79, C.R. 8, 13.

The letters that OCP submitted requesting relief from tax fines and penalties and the letters the tax administration sent to OCP approving the reductions make clear that the amount of benefit was unrelated to OCP's overall revenues or tax liability. Specifically, Exhibits TAX-2(a) and 2(b) and TAX-3 to OCP's initial questionnaire response show that OCP was assessed penalties **[**

**]**. *Id.*, Exhibit TAX-2(a), P.R. 79, C.R. 13 (**[**

**]**); Exhibit TAX-2(b), P.R. 79, C.R. 13 (**[**

**]**, Exhibit TAX-3, P.R. 79, C.R. 13 (**[**

**]**); *see also* GOM's Letter, "Response of the Government of the Kingdom of Morocco to Commerce's Initial Questionnaire" (Aug. 22, 2022) ("GOM IQR"), vol. III at III-2, P.R. 44, 48, C.R. 20, 24 (**[**

**]**).

In holding that Commerce's disproportionality analysis "wrongfully ignored highly probative evidence of OCP's relative size," the Court cited OCP's assertion in its opening brief that the record shows "tax fines and penalties are generally assessed based on a percentage of the taxes or fees owed." *Remand Order* at 38-39. But OCP failed to note that the **[**

- 8 -

Case 1:23-cv-00246-TCS    Document 104    Filed 07/30/25    Page 13 of 15

BUSINESS PROPRIETARY
INFORMATION DELETED

Consol. Court No. 23-00246                              NON-CONFIDENTIAL VERSION

[     ], not the company's total taxes paid or its overall size.

The [     ] reduction in tax fines and penalties that OCP received during the POR related to OCP's [

     ]. OCP IQR, Exhibits TAX-4 & TAX-5, P.R. 79, C.R. 13. The amounts of such fines that the GOM assessed to OCP and subsequently cancelled bear no relationship whatsoever to OCP's relative size or the total taxes for which it was liable during the POR. Thus, Commerce's original finding was correct: OCP's size relative to other companies receiving penalty reductions is irrelevant to the disproportionality analysis.

In the Remand Determination, Commerce stated that it "is obligated to take action on remand that is consistent with the Court's remand order" and that "{a}bsent additional evidence or argument that would allow us to reconsider our specificity determination on a basis other than those already considered by the Court, we have no alternative available to us to find that this program is specific." Remand Determination at 7, P.R.R. 5. However, in remanding for reconsideration because Commerce "wrongfully ignored highly probative evidence of OCP's relative size," the Court relied on OCP's mischaracterization of the record and may not have considered the evidence Mosaic identified in its comments on the Draft Remand Results, as outlined above. Thus, Commerce erred in declining to evaluate the evidence Mosaic identified and whether this evidence supports Commerce's original specificity finding.

Finally, although the Court criticized Commerce's disproportionality analysis for "def{ying} logic and common sense," *Remand Order* at 38, the absence of record evidence showing a correlation between a company's size and the amount of subsidy received under this program is the respondents' fault, not Commerce's. The Government of Morocco ("GOM")

Case 1:23-cv-00246-TCS    Document 104    Filed 07/30/25    Page 14 of 15

**Consol. Court No. 23-00246** NON-CONFIDENTIAL VERSION

provided a list of the 50 largest beneficiaries under the program that describes the subsidy recipients by sector, but it did not provide any information about the size of each company or its contributions to Morocco's GDP. *See* GOM IQR, vol. III at III-8 – III-9, P.R. 48, C.R. 24. It was reasonable for Commerce to rely on the information that the GOM *did* provide, namely the total number of actual subsidy recipients and the total amount of benefits, and to compare this information to OCP's reported benefits under this program. *See* IDM, cmt. 10, P.R. 370. This record evidence more than adequately supports Commerce's previous finding that OCP received a disproportionately large amount of the subsidy under this program. The Court should therefore remand again to Commerce to reconsider its conclusion that there is no basis on the record to conclude that the reduction in tax fines and penalties program is *de facto* specific to OCP.

## CONCLUSION

For the reasons discussed above, Mosaic respectfully requests that the Court remand to Commerce to reconsider its conclusion regarding *de facto* specificity of the reduction in tax fines and penalties program.

Respectfully submitted,

/s/ David J. Ross
David J. Ross
Stephanie E. Hartmann
Alexandra S. Maurer

Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6300
Facsimile: (202) 663-6363
Email: david.ross@wilmerhale.com

Dated: July 30, 2025                    *Counsel for The Mosaic Company*

**Consol. Court No. 23-00246**                                    NON-CONFIDENTIAL VERSION

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this submission complies with the word limitation requirement.  The word count for this submission, as computed by Wilmer Cutler Pickering Hale and Dorr LLP's word processing system, is 3,115 words.

/s/ David J. Ross
(Signature of Attorney)

David J. Ross
(Name of Attorney)

The Mosaic Company
(Representative Of)

July 30, 2025
(Date)
