**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

THE MOSAIC COMPANY, et al.,

Plaintiffs,

v.

UNITED STATES,

Defendant,

and

THE GOVERNMENT OF THE KINGDOM OF MOROCCO and OCP S.A., et al.,

Defendant-Intervenors.

**Before: Timothy C. Stanceu, Judge**

**Consol. Court No. 23-00246**

**NON-CONFIDENTIAL VERSION**

**Business Proprietary Information Removed from pages 3, 7-10**

# CONSOLIDATED PLAINTIFF AND DEFENDANT-INTERVENOR OCP S.A.'S COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

William R. Isasi
Shelby Anderson
Wanyu Zhang
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956

Micaela McMurrough
Hardeep K. Josan
Jordan B. Bakst
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

*Counsel to OCP S.A.*

Dated: July 30, 2025

# TABLE OF CONTENTS

I. Introduction ........ 1

II. Case Background ........ 1

III. Summary of the Argument ........ 2

IV. The Court Should Affirm Commerce's Determination that Reductions in Tax Fines and Penalties Were Not *De Facto* Specific. ........ 3

V. Conclusion ........ 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AK Steel Corp. v. United States*,
192 F.3d 1367 (Fed. Cir. 1999)....6, 8

*Allegheny Ludlum Corp. v. United States*,
112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ....8

*Bethlehem Steel Corp. v. United States*,
140 F. Supp. 2d 1354 (2001) ....8

*Hyundai Steel Co. v. United States*,
745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ....6, 11

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024)....5, 6

*MacLean-Fogg Co. v. United States*,
100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ....4

*The Mosaic Co. v. United States*,
774 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) ....2–7, 10–12

*Shandong Huarong Mach. Co. v. United States*,
29 CIT 484 (Ct. Int'l Trade 2005) ....11

*The Mosaic Co. v. United States*,
744 F. Supp. 3d 1367 (Ct. Int'l Trade 2025) ....4, 12

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)....4, 5

**Other Authorities**

*Coated Free Sheet Paper from the Republic of Korea: Notice of Final Affirmative Countervailing Duty Determination*, 72 Fed. Reg. 60,639 (Oct. 25, 2007) ....6

*Dynamic Random Access Memory Semiconductors from the Republic of Korea: Final Results of Countervailing Duty Administrative Review*, 76 Fed. Reg. 2,336 (Jan. 13, 2011)....7

*Final Negative Countervailing Duty Determination: Live Swine from Canada*, 70 Fed. Reg. 12,186 (Mar. 11, 2005)....7

*Phosphate Fertilizers from the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2020–2021*, 88 Fed. Reg. 76,726 (Nov. 7, 2023) ........................................................................................................1

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040..................................................4

## I. Introduction

On behalf of OCP S.A. ("OCP"), we respectfully submit comments on the Final Results of Redetermination Pursuant to Court Remand issued by the U.S. Department of Commerce ("Commerce") pursuant to the Court's remand order in *The Mosaic Company v. United States*, 774 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) ("Remand Order"). *See Final Results of Redetermination Pursuant to Court Remand* (July 7, 2025) ("Final Redetermination") (P.R.R. 5). As detailed below, Commerce correctly determined in the Final Redetermination that the reductions in tax fines and penalties received by OCP were not specific. Accordingly, OCP respectfully requests that the Court sustain Commerce's Final Redetermination.

## II. Case Background

This action arises out of Commerce's final results in *Phosphate Fertilizers from the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2020–2021*, 88 Fed. Reg. 76,726 (Nov. 7, 2023) ("Final Results") (P.R. 374), and accompanying Issues and Decision Memorandum ("IDM") (P.R. 370). On August 7, 2024, both OCP and The Mosaic Company ("Mosaic") submitted briefs challenging multiple aspects of Commerce's *Final Results* and moving for judgment on the agency record pursuant to USCIT Rule 56.2. *See generally* OCP's Mem. in Supp. of R. 56.2 Mot. for J. Upon the Agency Record (Aug. 7, 2024), ECF Nos. 75–76; Mosaic's Mem. in Supp. of R. 56.2 Mot. for J. Upon the Agency Record (Aug. 7, 2024), ECF Nos. 88, 90. OCP's Rule 56.2 motion challenged, in relevant part, Commerce's determination that reductions in tax fines and penalties received under Article 236 of the Moroccan General Tax Code were *de facto* specific.

On April 1, 2025, the Court ruled on both OCP's and Mosaic's motions for judgment on the agency record. The Court denied Mosaic's motion in full and granted OCP's motion in part,

remanding Commerce's *de facto* specificity determination for the tax fines and penalties program. On June 4, 2025, Commerce issued its Draft Results of Redetermination Pursuant to Court Remand. *See Draft Results of Redetermination Pursuant to Court Remand* (June 4, 2025) ("Draft Redetermination") (P.R.R. 1). In its Draft Redetermination, Commerce found under protest that reductions in tax fines and penalties were not specific because OCP was not a disproportionate user and the record provided no basis for finding the reductions *de facto* specific under the remaining statutory criteria in 19 U.S.C. § 1677(5A)(D)(iii). *See id.* at 4 (P.R.R. 1). On June 11, 2025, both OCP and Mosaic submitted comments to Commerce pertaining to the Draft Redetermination. *OCP's Comments on Draft Results of Redetermination Pursuant to Court Remand* (June 11, 2025) ("OCP Remand Comments") (P.R.R. 4; C.R.R. 2); Mosaic, *Comments on Draft Remand Redetermination* (Nov. 30, 2023) ("Mosaic Remand Comments") (P.R.R. 3; C.R.R. 1). On July 7, 2025, Commerce issued its Final Redetermination leaving unchanged the determination announced in the Draft Redetermination. *See* Final Redetermination at 7 (P.R.R. 5). OCP now submits these comments on Commerce's Final Redetermination to the Court.

## III. Summary of the Argument

In the Remand Order, the Court held that Commerce's specificity determination for reductions in tax fines and penalties under Article 236 of the Moroccan Tax Code "wrongfully ignored highly probative evidence of OCP's relative size" and did not accord with specificity principles set forth in the Statement of Administrative Action ("SAA"). *See* Remand Order at 1383. In the Final Redetermination, Commerce found under protest that OCP's reductions in tax fines and penalties were not *de facto* specific. Final Redetermination at 7 (P.R.R. 5). Commerce's determination complies with the Court's order, is supported by substantial evidence, and is otherwise in accordance with law.

As required by 19 U.S.C. § 1677(5A)(D)(iii), Commerce must take into account the fact that economic activities in Morocco were largely concentrated in OCP and its consolidated companies. In addition, the best reading, or any reasonable interpretation, of the term "disproportionately large" in 19 U.S.C. § 1677(5A)(D)(iii)(III) requires Commerce to consider OCP's size relative to other companies in Morocco in determining whether the reductions that OCP received are "disproportionately large" and thus justify a finding of *de facto* specificity. Record evidence establishes that despite having a net taxable income of more than [ ] MAD in 2019 and having an annual revenue that was equivalent to 6.6% of Morocco's Gross Domestic Product ("GDP"), OCP received [ ] of the total reductions granted to corporate taxpayers in 2021. Commerce correctly found that the record demonstrated that OCP did not receive a disproportionately large amount of the subsidy within the meaning of 19 U.S.C. § 1677(5A)(D)(iii)(III). Moreover, because of the widespread availability and use of reductions in tax fines and penalties, this program was not what Congress intended for Commerce to find specific as explained in the SAA. As Commerce's determination is supported by the record and conforms to the best reading of the Statute, this Court should sustain the Final Redetermination.

## IV. The Court Should Affirm Commerce's Determination that Reductions in Tax Fines and Penalties Were Not *De Facto* Specific.

In the *Final Results*, Commerce found reductions in tax fines and penalties under Article 236 of Morocco's General Tax Code *de facto* specific because "OCP was a disproportionate user" under 19 U.S.C. § 1677(5A)(D)(iii)(III). *See* IDM at 47–48 (P.R. 370). The Court remanded Commerce's specificity determination, holding that Commerce "wrongfully ignored highly probative evidence of OCP's relative size" and made a specificity finding that contradicts Congressional intent as set forth in the SAA. Remand Order at 1383. The Court reached a similar conclusion when remanding the *de facto* specificity determination for reductions in tax

fines and penalties in the original investigation. *See The Mosaic Co. v. United States*, 744 F. Supp. 3d 1367, 1378–81 (Ct. Int'l Trade 2025) ("*Mosaic II*") (holding, in part, that Commerce offered no "convincing rebuttal" to evidence of OCP's relative size). In the Final Redetermination, Commerce determined, under protest, that the reductions in tax fines and penalties are not specific. Final Redetermination at 3–7 (P.R.R. 5). As discussed below, this determination complies with the Court's order, is supported by substantial evidence and otherwise in accordance with law, and should be sustained. *See, e.g.*, *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) ("The court will sustain Commerce's countervailing duty determinations on remand if they are in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law.").

In evaluating *de facto* specificity, Commerce "*shall* take into account the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy . . . ." 19 U.S.C. § 1677(5A)(D)(iii) (emphasis added). The SAA explains that the diversification of economic activities should "inform the application of" the specificity factors, meaning it provides "a clearer context within which the de facto factors would be analyzed." SAA at 931. The Court has found that this statutory directive "is yet another indication that Congress did not consider a government benefit such as the one at issue here to be countervailable." *Mosaic II*, 744 F. Supp. 3d at 1379–80. To adhere to the best, or even a reasonable, reading of the Statute and to conduct a meaningful analysis of the statutory directive consistent with the Court's ruling, Commerce must consider the extent of diversification of economic activities within Morocco, including the heavy concentration of economic activities in Morocco in the mining and production of phosphate products which are conducted by OCP and

its consolidated companies. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024); 19 U.S.C. § 1677(5A)(D)(iii).

Record evidence shows that economic activities in Morocco were largely concentrated in the mining and production of phosphate products and that OCP and its consolidated companies "essentially comprise the entire Moroccan phosphate industry." *See Phosphate Fertilizers from the Kingdom of Morocco: The Government of the Kingdom of Morocco's Response to Commerce's First Supplemental Questionnaire* (Dec. 7, 2022) ("GOM 1SQR") at 4–5 (P.R. 162; C.R. 154) ("the phosphate industry and the consolidated companies that make up the OCP Group are a very significant component of the Moroccan economy"). Morocco's 2021 GDP was 1,284.2 billion MAD, but the annual revenue of OCP alone was more than 84,300 million MAD, equivalent to 6.6% of the country's GDP. *See Phosphate Fertilizers from the Kingdom of Morocco: Questionnaire Response of the Government of the Kingdom of Morocco* (Aug. 22, 2022) ("GOM IQR") at Exhibit I-1, p. 29 (showing Morocco's 2021 GDP as 1,284.2 billion MAD) (P.R. 45; C.R. 21); *Phosphate Fertilizers from the Kingdom of Morocco: OCP S.A. Section III Initial Questionnaire Response* (Aug. 22, 2022) ("OCP IQR") at Exhibit GEN-8(j), p. 3 (showing OCP's 2021 revenue as 84,300 million MAD) (P.R. 77; C.R. 11).

In addition, OCP was Morocco's largest corporate group by annual revenue, *see* Remand Order at 1382, and was Morocco's largest private sector employer in 2021. *See* GOM 1SQR at 4–5 & Exhibit SUPP-1 (Part C) (P.R. 162; C.R. 154). As the GOM emphasized on the record, OCP is "a very significant component of the Moroccan economy." *Id.* at 4. The extraordinary concentration of Morocco's economic activities in the mining and production of phosphate products and OCP's large size within the country's economy provide context supporting the Court's ruling, *i.e.* a higher amount of reductions in tax fines and penalties in absolute terms does

not demonstrate that OCP received a disproportionally large amount of the reductions. *See* Remand Order at 1382–83.

In addition, the best reading, or even any reasonable interpretation of the term "disproportionately large" in 19 U.S.C. § 1677(5A)(D)(iii)(III) requires Commerce to consider OCP's size relative to other companies in Morocco in determining whether the amount of the reductions in tax fines and penalties that OCP received supported a finding of *de facto* specificity. *See Loper Bright Enters.*, 144 S. Ct. at 2266. As the Federal Circuit has cautioned, finding "a benefit conferred on a large company might be disproportionate *merely because of the size of the company*" would "produce an untenable result." *AK Steel Corp. v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999) (emphasis added). This Court also confirmed that "{d}isproportionality requires that an enterprise or industry is favored in some way (i.e., it receives more than its fair share)," and that Commerce must explain how the respondent benefited "more than would be expected, based on their usage given that the subsidy in question is designed to confer benefits on usage levels, or in relation to some other comparator." *Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345, 1353 (Ct. Int'l Trade 2024).

Considering OCP's large size in evaluating whether OCP received a disproportionately large amount of reductions also conforms with agency practice. Commerce has previously analyzed whether the respondent received a disproportionately large amount of a subsidy by measuring the subsidy received against the respondent's size, often reflected in the respondent's contribution to GDP or income. *See, e.g.*, *Coated Free Sheet Paper from the Republic of Korea: Notice of Final Affirmative Countervailing Duty Determination*, 72 Fed. Reg. 60,639 (Oct. 25, 2007), and accompanying IDM at 18–20 (measuring the share of lending received by the respondent sectors against the sectors' share of Korea's manufacturing GDP, and finding that the

benefit they received was not disproportionately large compared to their "contribution" to the GDP); *Final Negative Countervailing Duty Determination: Live Swine from Canada*, 70 Fed. Reg. 12,186 (Mar. 11, 2005), and accompanying IDM at 19 (comparing the percentage of benefits the swine producers received among agricultural producers to the percentage of income the swine producers received among the same group, and finding that the benefit received was not disproportionately large); *Dynamic Random Access Memory Semiconductors from the Republic of Korea: Final Results of Countervailing Duty Administrative Review*, 76 Fed. Reg. 2,336 (Jan. 13, 2011), and accompanying IDM at 3 (finding that the respondent received a disproportionately large amount of the subsidy after evaluating the benefit received relative to the respondent's size among all companies in Korea).

The amount of reductions in tax fines and penalties that OCP received was not "disproportionately large"—and in fact was disproportionately small—considering OCP's large size within the Moroccan economy. Despite having a net taxable income of more than [ ] MAD, being the largest corporate group by revenue, and representing 6.6% of Morocco's GDP in 2021, OCP was not even among the top five largest beneficiaries of reductions in tax fines and penalties. *See* OCP IQR at Exhibit GEN-1(a) (showing OCP's net taxable income) (P.R. 77; C.R. 9); GOM IQR at Exhibit I-1, p. 29 (showing Morocco's 2021 GDP as 1,284.2 billion MAD) (P.R. 45; C.R. 21); OCP IQR at Exhibit GEN-8(j), p. 3 (showing OCP's 2021 revenue as 84,300 million MAD) (P.R. 77; C.R. 11); GOM 1SQR at 13–14 (Table Supp-6) (listing the 50 largest beneficiaries) (P.R. 162; C.R. 154). In fact, OCP received what this Court described as "a miniscule percentage"—[ ]%—of the total reductions received by corporate taxpayers in 2021. Remand Order at 1382; GOM 1SQR at 6 (Table Supp-1) (showing OCP received total reductions in the amount of [ ] MAD in 2021) (P.R.

162; C.R. 154); GOM 1SQR at 8 (Table Supp-2) (showing total reductions granted by the GOM to all companies in the amount of [ ] MAD in 2021).

This miniscule percentage also stands in stark contrast with the much higher percentages that Commerce has declined to find disproportionate in other *de facto* specificity analyses. *See, e.g.*, *AK Steel Corp.*, 192 F.3d at 1384–85 (affirming Commerce's non-disproportionality finding where Korean producers "received 86.6% of the benefit" of an alleged subsidy); *Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354, 1369 (2001) (sustaining Commerce's decision that the Korean steel industry's receipt of 51% of certain discounts awarded by the Government was not indicative of a finding of disproportionality); *Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1152, 1154 (Ct. Int'l Trade 2000) (sustaining Commerce's decision that loans made to the Belgian steel industry were not specific because the industry did not receive a disproportionate share of loans where its share of loans ranged between 2% and 7.77%).

In comments on the Draft Redetermination, Mosaic incorrectly argued that reductions received by OCP in 2021 "bore no relationship to its size, revenue, or total tax liability." Mosaic Remand Comments at 6. Specifically, Mosaic asserted that OCP received reductions [

]. *Id.* at 6–9. These arguments rely on a false and unsupported premise that the amount of reductions in tax fines and penalties can relate to a company's size only when related to income tax. The amount of reductions in fines and penalties assessed on [ ] also directly relate to OCP's large size.

OCP's size is reflected not just in the amount of its taxable income, but also in its status as Morocco's largest private sector employer. As Morocco's largest employer, OCP incurs [ ]. GOM 1SQR at 4–5 (P.R. 162; C.R. 154). Indeed, the [ ] OCP filed in 2021, based on which the tax fines and penalties were calculated, related to [ ]. OCP IQR at Exhibit TAX-2(b) (P.R. 79; C.R. 13). Thus, contrary to Mosaic's argument, there is a direct relationship between OCP's size as the largest private employer in Morocco, and the reductions in tax fines and penalties it received [ ].

Similarly, the amount of reductions in tax fines and penalties related to [ ] logically relates to OCP's status as the corporate group compromising essentially Morocco's entire phosphate mining industry. OCP is the only company that mines phosphate in all of Morocco and "owns the land upon which it mines." GOM IQR Vol. V at V-1–2 (P.R. 53; C.R. 33). OCP's phosphate mines cover over [ ] acres of land. OCP Verification Exhibits (Sept. 15, 2023) at Exhibit VE-1(f) (showing OCP's total mining area as [ ] hectares, equivalent to [ ] acres in revised Mining Rights Template) (P.R. 346, C.R. 319). This evidence demonstrates that OCP's significantly large business operations in Morocco are [ ], meaning that OCP engages in [ ] and reflective of the concentration of Morocco's economic activities in phosphate mining. Thus, contrary to Mosaic's argument, the record establishes a direct relationship between OCP's size and the reductions in tax fines and penalties it received related to [ ].

Notably, the Court did not preclude Commerce on remand from identifying "evidence to support its assumptions that a company's total reduction in tax fines or penalties has no relationship to the total amount of its revenue or to the total taxes for which it is liable," if any. *See* Remand Order at 1382. Commerce did not identify any such evidence. Instead, for the reasons set forth above, the record *affirmatively* demonstrates a relationship between OCP's size and the reductions in tax fines and penalties that it received during the period of review (*i.e.*, the amount of reductions in fines and penalties assessed on [ ] directly relate to OCP's status as Morocco's largest private sector employer and the corporate group compromising essentially Morocco's entire phosphate mining industry). Therefore, Commerce's conclusion that Mosaic failed to provide "evidence or argument" to support a different specificity finding in this review was correct and should be sustained. *See* Final Redetermination at 7.

Mosaic also argued that there is an "absence of record evidence showing a correlation between a company's size and the amount of subsidy received" because the GOM did not provide information about [ ] for the 50 largest subsidy recipients. Mosaic Remand Comments at 8. Mosaic is incorrect; the GOM did not fail to provide any information in the administrative review. The GOM provided a *complete* response to Commerce's question regarding the largest 50 recipients of reductions in tax fines and penalties. *See* GOM IQR Vol. III at III-8–9 (Table III-4) (P.R. 48; C.R. 24); GOM 1SQR at 13–14 (Table Supp-6) (P.R. 162; C.R. 154).

The information submitted by the GOM demonstrates that OCP did not receive the most, or even the second most, reductions among all recipients. Instead, OCP received only the sixth largest reductions notwithstanding that the OCP Group was by far the largest corporate group

within Morocco with revenues representing approximately 6.6% of the national GDP. *See* GOM IQR at Exhibit I-1, p. 29 (showing Morocco's 2021 GDP as 1,284.2 billion MAD) (P.R. 45; C.R. 21); OCP IQR at Exhibit GEN-8(j), p. 3 (showing OCP's 2021 revenue as 84,300 million MAD) (P.R. 77; C.R. 11); GOM 1SQR at 13–14 (Table Supp-6) (listing the 50 largest beneficiaries) (P.R. 162; C.R. 154); GOM 1SQR at 6 (Table Supp-1) (listing reductions received by OCP). Thus, contrary to Mosaic's argument, record evidence demonstrates that OCP did *not* receive a disproportionately large amount of reductions in tax fines and penalties. Moreover, Commerce correctly declined to rely on the *absence* of evidence to support a contrary determination in its Final Redetermination. *See Shandong Huarong Mach. Co. v. United States*, 29 C.I.T. 484, 498 (2005) ("{I}t is not sufficient for Commerce to simply rely on the absence of evidence to reach its decision; rather, Commerce must provide findings and analysis justifying its determination.").

Record evidence therefore establishes that OCP did not receive disproportionate reductions (*i.e.*, "more than would be expected") or receive some "atypical benefit" to support a *de facto* specificity finding under the "disproportionately large" statutory provision. *See Hyundai Steel*, 745 F. Supp. 3d at 1354; Remand Order at 1382 (requiring Commerce to demonstrate that OCP received "*atypical benefit*" from the Government of Morocco) (emphasis added). As the Court found in the Remand Order, Commerce's initial dismissal of evidence and arguments related to OCP's uniquely large size within the Moroccan economy "defies logic and common sense," and Commerce did not "demonstrate that OCP got some preferential treatment or other atypical benefit from the Moroccan government's administration of the widely available tax fine and penalty relief program" to reach "a valid factual finding that OCP was a 'disproportionate' user" within the meaning of 19 U.S.C. § 1677(5A)(D)(iii)(III). Remand Order at 1382 (citing *Mosaic II* at 1380). In its Final Redetermination, Commerce addressed these

errors and correctly concluded that OCP's reductions in tax fines and penalties were not *de facto* specific.

Lastly, as the Court has emphasized, the SAA sets forth a guiding principle that CVD duties should not be imposed where "because of the widespread availability and use of a subsidy, the benefit of the subsidy is spread throughout an economy." *Id.* at 1382–83 (quoting SAA at 930); *Mosaic II*, 744 F. Supp. 3d at 1379. Cautioning that a subsidy "'available to all industries and sectors,' should not be considered to satisfy the specificity requirement," the Court directed Commerce to distinguish between subsidies that are provided to or used by discrete segments of the economy, which should be countervailed, and those that distribute a benefit throughout the entire economy, which should not be countervailed. Remand Order at 1382; *Mosaic II* at 1379.

The reductions in tax fines and penalties were not limited to a discrete segment of the Moroccan economy. To the contrary, companies from a wide variety of sectors received reductions in 2021, including, for example, those in transport and storage, real estate, science, automobile repair, construction, finance and insurance, manufacturing, and arts. *See* GOM 1SQR at 13–14 (Table Supp-6) (P.R. 162; C.R. 154). Consistent with both the Remand Order and *Mosaic II*, Congress did not intend for Commerce to find these types of reductions in fines and penalties—*i.e.*, those that are widely distributed through the Moroccan economy—to be "specific." Therefore, Commerce's Final Redetermination conforms to Congress's intent as reflected in the SAA.

In conclusion, the determination that the reductions in tax fines and penalties are not *de facto* specific complies with the Court's remand order, is supported by substantial evidence and otherwise in accordance with law. The Court should affirm Commerce's Final Redetermination with respect to reductions in tax fines and penalties.

## V. Conclusion

OCP respectfully submits that the Court should sustain Commerce's finding that the reductions in tax fines and penalties are not *de facto* specific.

Respectfully submitted,

Dated: July 30, 2025

/s/ William R. Isasi
William R. Isasi
Shelby Anderson
Wanyu Zhang
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956

Micaela McMurrough
Hardeep K. Josan
Jordan B. Bakst
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

*Counsel to OCP S.A.*

CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the attached OCP S.A's Comments on Final Results of Redetermination Pursuant to Court Remand, filed on July 30, 2025, contains 3,758 words, including footnotes, and excluding the table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare these comments, and therefore complies with the maximum word count limitation set forth in Chamber Procedure 2(B)(1)(b).

/s/ *Wanyu Zhang*
Wanyu Zhang