Slip Op. 25-155

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE MOSAIC COMPANY, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Timothy C. Stanceu, Judge |
| Defendant, | Consol. Court No. 23-00246 |
| and | |
| THE GOVERNMENT OF THE KINGDOM OF MOROCCO and OCP S.A., | |
| Defendant-Intervenors. | |

OPINION

[Sustaining an agency decision submitted in response to court order in an action arising from an administrative review of a countervailing duty order on phosphate fertilizers from Morocco]

Dated: December 16, 2025

*David J. Ross*, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, D.C., for plaintiff and defendant-intervenor The Mosaic Company. With him on the brief were *Stephanie E. Hartmann* and *Alexandra S. Maurer*.

*William R. Isasi*, Covington & Burling LLP, of Washington, D.C., for plaintiff and defendant-intervenor OCP S.A. With him on the brief were *Shelby Anderson*, *Wanyu Zhang*, *Micaela McMurrough*, and *Hardeep K. Josan*.

*Sosun Bae*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief

were *Brett A. Shumate*, Assistant Attorney General, and *Patricia M. McCarthy*, Director. Of counsel on the brief was *Joseph Grossman-Trawick*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Stanceu, Judge:  In this consolidated action, plaintiff and defendant-intervenor The Mosaic Company ("Mosaic") and plaintiff and defendant-intervenor OCP S.A. ("OCP") contested a final determination of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department").  The contested determination concluded an administrative review of a countervailing duty ("CVD") order on phosphate fertilizers from the Kingdom of Morocco ("Morocco").

Before the court is the "Remand Redetermination" Commerce issued in response to the court's opinion and order in *The Mosaic Company v. United States*, 49 CIT __, 774 F. Supp. 3d 1362 (2025) ("*Mosaic I*").  Final Results of Redetermination Pursuant to Ct. Remand (Int'l Trade Admin. June 30, 2025), ECF No. 100-1 ("*Remand Redetermination*").

Mosaic, a domestic producer of phosphate fertilizer and the petitioner in the original countervailing duty investigation, opposes the Remand Redetermination.  The Mosaic Co.'s Comments on Commerce's Remand Redetermination (July 30, 2025), ECF Nos 104 (public), 105 (conf.) ("Mosaic's Comments").  Defendant and OCP, the only known phosphate fertilizer producer in Morocco, argue that the Remand Redetermination should be sustained.  Def.'s Resp. to Comments on the Dep't of Commerce's Remand Redetermination (Aug. 14, 2025), ECF No. 109 ("Def.'s Resp."); Consol. Pl. and Def.-Int. OCP S.A.'s Comments on Final Results of Redetermination

Pursuant to Ct. Remand (July 30, 2025), ECF Nos. 106 (conf.), 107 (public) ("OCP's Comments").

The court will enter judgment sustaining the Remand Redetermination.

## I. BACKGROUND

Background is provided in the court's previous opinion and order and is supplemented herein. *Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1366–68.

### A.  The Contested Determination

Commerce issued the countervailing duty order on phosphate fertilizers from the Kingdom of Morocco (the "Order") in 2021. *Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Int'l Trade Admin. Apr. 7, 2021) (*"Order"*).

The contested determination (the "Final Results") was published as *Phosphate Fertilizers From the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2020–2021*, 88 Fed. Reg. 76,726 (Int'l Trade Admin. Nov. 7, 2023), P.R. Doc. 374, ECF No. 92-2 (*"Final Results"*).[1] Commerce incorporated in the Final Results by reference an accompanying "Issues and Decision Memorandum." *Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of*

---

[1] Documents in the Joint Appendix (Mar. 14, 2025), ECF Nos. 92 (public), 93 (conf.) are cited herein as "P.R. Doc. __." Citations to Joint Appendix documents are to the public versions.

*Phosphate Fertilizers from the Kingdom of Morocco; 2020–2021* (Int'l Trade Admin. Nov. 1, 2023), P.R. Doc. 370, ECF No. 92-2 ("*I&D Mem.*").  Commerce issued a "Post-Final Determination" (also identified as the "BPI Supplement to IDM") on November 2, 2023 that provided explanation supplementing the Issues and Decision Memorandum.  *Final Results of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Kingdom of Morocco: Business Proprietary Information Accompanying the Issues and Decision Memorandum for the Final Results* (Int'l Trade Admin. Nov. 2, 2023), P.R. Doc. 372, ECF No. 92-2.

The Final Results concluded the first administrative review of the Order and pertained to a period of review of November 30, 2020 through December 31, 2021.  *Final Results*, 88 Fed. Reg. at 76,726.  Commerce determined a combined net subsidy rate of 2.12% *ad valorem* for OCP.  *Id.*  The rate included individual *ad valorem* subsidy rates for five government programs, as follows: "Government Loan Guarantees," 0.02%; "Tax Incentives for Export Operations," 0.71%; "Reductions in OCP's Tax Fines and Penalties," 0.01%; "Revenue Exclusions for Minimum Tax Contributions," 0.06%; and "Customs Duty Exemptions for Capital Goods, Machinery, and Equipment," 0.05%.  *Final I&D Mem.* 11–12.  These five subsidy rates totaled 0.85%.  The remainder of the 2.12% combined subsidy rate, 1.27%, resulted from the Department's determining that OCP untimely reported a "payroll tax refund" and thereby failed to respond timely to a request for information.  *Id.* at 7–11.  Commerce imposed the 1.27% subsidy rate using

Consol. Court No. 23-00246                                                                 Page 5

"facts otherwise available" under section 776(a) of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C. § 1677e(a), with an "adverse inference" under section 776(b) of the Tariff Act, 19 U.S.C. § 1677e(b).[2]  *Id.* at 6–7.

### B. The Court's Previous Opinion and Order

In *Mosaic I*, the court ruled on motions for judgment on the agency record submitted by Mosaic and OCP under USCIT Rule 56.2.  Rule 56.2 Mot. for J. on the Agency R. Submitted on Behalf of The Mosaic Co. (Aug. 7, 2024), ECF Nos. 88 (conf.), 90 (public); OCP S.A.'s Rule 56.2 Mot. for J. on the Agency R. (Aug. 7, 2024), ECF Nos. 75 (conf.), 76 (public).  The court concluded that the contested determination was contrary to law with respect to the Department's affirmative "specificity" determination for the government program providing for reductions in tax fines and penalties.  *Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1366, 1381–83.  The court issued a remand order directing Commerce to reconsider its specificity determination.  *Id.*, 49 CIT at __, 774 F. Supp. 3d at 1366, 1383.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced

---

[2] Citations to the United States Code are to the 2018 version.  Citations to the Code of Federal Regulations are to the 2023 version.

under section 516A of the Tariff Act, 19 U.S.C. § 1516a, including an action contesting a final determination that Commerce issues to conclude an administrative review of a countervailing duty order, *id.* § 1516a(a)(2)(B)(iii).

In reviewing a final determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence refers to "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938)).

### B.  Countervailing Duties under the Tariff Act

Section 701(a) of the Tariff Act, 19 U.S.C. § 1671(a), provides generally that a "countervailing duty" is imposed if Commerce determines that a foreign government or other public entity (an "authority") "is providing . . . a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States" and the U.S. International Trade Commission reaches an affirmative injury or threat determination with respect to that merchandise.

A "countervailable subsidy" may exist where a government authority "provides a financial contribution" to a person, "a benefit is thereby conferred," and the subsidy

meets a "specificity" requirement as defined by the Tariff Act. 19 U.S.C. §§ 1677(5), 1677(5A).

### C. The Remand Redetermination Issued in Response to *Mosaic I*

In the Remand Redetermination, Commerce reconsidered, under protest, its specificity determination for the subsidy provided under the government program for reductions in tax fines and penalties and concluded that the subsidy did not meet the specificity requirement of 19 U.S.C. § 1677(5A). *Remand Redetermination* 1–2, 6–7. With the removal of the 0.01% subsidy rate that it had previously calculated for the program, Commerce assigned a revised 2.11% total *ad valorem* subsidy rate to OCP. *Id.* at 2, 8.

Mosaic opposes the Department's finding that the subsidy provided under the tax fines and penalties reduction program is not *de facto* specific. Mosaic's Comments 3–10. OCP and the government support the Remand Redetermination. OCP's Comments 1–13; Def.'s Resp. 1, 5–6.

### D. Determination that the Subsidy Provided under the Tax Fines and Penalties Relief Program Does Not Meet the "Specificity" Requirement of the Tariff Act

As this Court recounted in *Mosaic I*, the Moroccan government maintains a program under which taxpayers may apply for and receive reductions in tax fines and penalties. *Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1381. Section 771(5A)(D)(iii)(I)–(IV) of the Act, 19 U.S.C. § 1677(5A)(D)(iii)(I)–(IV), provides that

> [w]here there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist:

    (I)      The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.
    (II)     An enterprise or industry is a predominant user of the subsidy.
    (III)    An enterprise or industry receives a disproportionately large amount of the subsidy.
    (IV)    The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

19 U.S.C. § 1677(5A)(D)(iii). In the Final Results, Commerce concluded that the subsidy OCP received from this program during the period of review was *de facto* specific because OCP received "a disproportionately large amount of the subsidy" within the meaning of subparagraph (III). *Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1381 (citing *Final I&D Mem.* 47–50).

      In *Mosaic I*, this Court set aside the Department's *de facto* specificity determination, concluding that it "does not accord with the limiting principle set forth in" the Statement of Administrative Action ("SAA") accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103–316, at 929–30 (1994) ("*SAA*"), "in which Congress expressed its intent that a broad-based, nationwide program such as Morocco's procedure allowing relief from tax fines and penalties is not the type of program that satisfies the specificity requirement in the statute." *Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1382–83. "Under the guiding principle addressed in the SAA, Commerce must distinguish between subsidies that are provided to or used by discrete segments of the economy and those, such as the program at issue, that distribute a benefit

throughout the entire economy." *Id.*, 49 CIT at \_\_, 774 F. Supp. 3d. at 1382 (citation omitted).

On remand, Commerce reconsidered, under protest, its specificity determination and found that because "OCP was not a disproportionate user" of the tax fines and penalties reduction program, the program "is not specific and therefore not countervailable with respect to OCP." *Remand Redetermination* 3–4. Commerce stated, further, that "the record evidence does not provide a basis for a finding that the program is *de facto* specific under any of the other criteria enumerated in section 771(5A)(D)(iii) of the Act [19 U.S.C. § 1677(5A)(D)(iii)]." *Id.* at 4.

In opposing the Remand Redetermination, Mosaic posits that the level of availability of the program in question does not preclude a finding of *de facto* specificity under 19 U.S.C. § 1677(5A)(D)(iii)(III). Mosaic's Comments 4. Mosaic notes that Commerce, for the Final Results, described the "'original purpose of the specificity test'" as serving "'"as an initial screening mechanism to winnow out only those foreign subsidies which truly are broadly available and widely used throughout an economy."'" *Id.* at 5 (quoting *I&D Mem.* 48 (in turn quoting *SAA* 929)). Rather than be interpreted in isolation, the quoted sentence from the SAA must be considered in the context of the paragraph in the SAA that it introduces. The text of the entire paragraph, after the quoted sentence, reads as follows:

> In the leading case of *Carlisle Tire & Rubber Co. v. United States*, 564 F. Supp. 834 (Ct. Int'l Trade 1983), Judge Maletz explained that all governments, including the United States, intervene in their economies to one extent or another, and to regard all such interventions as countervailable subsidies would produce absurd results. Judge Maletz stated:
>
>> Thus, included in Carlisle's category of countervailable benefits would be such things as public highways and bridges, as well as a tax credit for expenditures on capital investment even if available to all industries and sectors. \*\*\* To suggest, as Carlisle implicitly does here, that almost every import entering the stream of American commerce be countervailed simply defies reason.
>
> 564 F. Supp. at 838.

*SAA* at 929–30. The SAA cited the example of "a tax credit for expenditures on capital investment even if available to all industries and sectors," *id.*, as a non-countervailable subsidy that fails to satisfy the specificity requirement. The tax program at issue here is broader even than that example: the record shows that it was available not only to "all industries and sectors" but also to the individual Moroccan taxpayers.

The concluding paragraph in the SAA's discussion of *de facto* specificity of domestic subsidies is as follows:

> The specificity test was intended to function as a rule of reason and to avoid the imposition of countervailing duties in situations where, because of the widespread availability *and use* of a subsidy, the benefit of the subsidy is spread throughout an economy. Conversely, the specificity test was not intended to function as a loophole through which narrowly focussed subsidies provided to or used by discrete segments of an economy could escape the purview of the CVD law.

*Id.* at 930.  Commerce did not make a finding that OCP received some preferential treatment when participating in the program, nor did it find that the program was anything other than one that was used on a country-wide basis in Morocco.  Simply stated, Commerce did not have a record upon which it validly could conclude that the program was, in the words of the SAA, *id.*, "narrowly focused" or "provided to or used by discrete segments of an economy."[3]

In summary, Mosaic's objection to the Remand Redetermination fails to confront the basic flaw affecting the specificity determination in the Final Results.  That flaw was inherent in the nature of the government program at issue.  Mosaic concedes that "this particular subsidy program may be 'widely available' to taxpayers in Morocco and have a large number of recipients."  Mosaic's Comments 4.  Attributing *de facto* specificity to the program at issue in this case would be contrary to the guiding principle set forth in the SAA.

---

[3] This case is distinguishable from this Court's recent decision in *Hyundai Steel Co. v. United States*, Ct. No. 22-00170, 49 CIT __, __, --- F. Supp. 3d ---, 2025 WL 2794489 (Sept. 22, 2025).  In that case, Commerce had found that an allocation under a Korean government emissions trading program was *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(I).  *Id.*, 49 CIT at __, 2025 WL 2794489, at *1–2.  Commerce found that the recipients of the full allocation "amounted to less than 0.1 percent of companies operating in the Korean economy," *id.*, 49 CIT at __, 2025 WL 2794489, at *2 (internal citations and quotations omitted), and that "the benefit of the full allocation" was "not 'widely available,'" *id.*, 49 CIT at __, 2025 WL 2794489, at *4 (internal citations omitted).

As an additional reason for its remanding of the specificity determination to Commerce, this Court stated that "the Department's disproportionality analysis wrongfully ignored highly probative evidence of OCP's relative size." *Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1383. Disagreeing with this Court's conclusion, Mosaic maintains that "the text of the statute does not require the Department to consider the relative size of a subsidy recipient, only whether an 'enterprise or industry receives a disproportionately large amount of the subsidy.'" Mosaic's Comments 7 (citing 19 U.S.C. § 1677(5A)(D)(iii)(III)). Alluding to the SAA, Mosaic argues, additionally, that "a finding that a subsidy is limited to a 'discrete segment of the economy' is not a prerequisite for a finding of *de facto* specificity." *Id*. at 7 n.2. These arguments are not persuasive.

While the statute does not mention specifically the relative size of a recipient in addressing proportionality, various indicia of a company's relative size can be probative on that issue, as they were in this case. Also relevant was that the benefit provided under the program was not found to be confined to what the SAA describes as a "discrete segment[] of [the] economy."

Mosaic argues that the record contained evidence that Mosaic received a disproportionately large amount of the subsidy, which, in its view, Commerce failed to consider. Mosaic's Comments 4 (arguing that "Commerce interpreted the Court's *Remand Order* in an unduly proscriptive manner as disallowing a specificity finding based on disproportionate use, and in so doing, unlawfully declined to consider additional record

evidence that supports its original finding"). Among the evidence upon which Mosaic relies is a comparison of OCP's benefit with the average benefit of other beneficiaries. *Id.* at 5. According to Mosaic, "the record shows that although this subsidy program may be available to companies throughout the Moroccan economy that incurred tax fines or penalties, OCP received a benefit that was roughly *900* times greater than the average amount that other beneficiaries received." *Id*. Mosaic also points to record evidence that, in its view, refutes a finding that the size of OCP's benefit was related to its revenue or tax liability. *Id*. at 8 ("The letters that OCP submitted requesting relief from tax fines and penalties and the letters the tax administration sent to OCP approving the reductions make clear that the amount of benefit was unrelated to OCP's overall revenues or tax liability."). Mosaic argues that the "record evidence more than adequately supports Commerce's previous finding that OCP received a disproportionately large amount of the subsidy under this program" and that "[t]he Court should therefore remand again to Commerce to reconsider its conclusion that there is no basis on the record to conclude that the reduction in tax fines and penalties program is *de facto* specific to OCP." *Id.* at 10.

The evidence upon which Mosaic selectively relies for its disproportionality analysis was not the only relevant record evidence. For example, as OCP points out, the record contained evidence of the size of OCP's net taxable income and showed that the OCP Group had "an annual revenue that was equivalent to 6.6% of Morocco's Gross Domestic Product ('GDP')." OCP's Comments 3; *see also Mosaic I*, 49 CIT at __, 774 F. Supp. 3d at 1382 (citing questionnaire responses of OCP and of the Moroccan

government). OCP also points to record evidence showing that OCP received a very small percentage of the total reductions granted to corporate taxpayers in 2021, OCP's Comments 3, that constituted "only the sixth largest reductions," *id.* at 10 (citations omitted). As OCP also argues, "OCP's size is reflected not just in the amount of its taxable income, but also in its status as Morocco's largest private sector employer." *Id*. at 9. Contrary to Mosaic's arguments, Commerce was not compelled by the record evidence to find that the size of OCP's benefit was unrelated to the evidence constituting indicia of the company's relative size and its substantial role within the Moroccan economy. This same evidence, when considered with record evidence as a whole, including evidence on the characteristics of the program, is sufficient to support the Department's finding, as stated in the Remand Redetermination, that the subsidy was not *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(III).

### III. CONCLUSION

For the reasons stated above, the Department's determination that the subsidy at issue was not countervailable is supported by substantial evidence on the record and is otherwise consistent with law.

The court will enter judgment sustaining the Remand Redetermination.

/s/ Timothy C. Stanceu<br>
Timothy C. Stanceu<br>
Judge

Dated: December 16, 2025
    New York, New York